In The Matter of The Estate of William E. Delligan,
Edward Leahy, Admr., Appellant,
By Joseph Duprey and Philip Delligan, Heirs.

February Term, 1940.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and
Jeffords, JJ.

Opinion filed May 7, 1940.

*H. J. Holden* and *Jay Chaffee* for the appellants.

*P. C. Warner* for the claimant.

JEFFORDS, J. This is an appeal from the decision of commissioners upon the estate of William E. Delligan. The case has been here once before upon questions raised by demurrer and motion to dismiss and was remanded to the county court for further proceedings. 110 Vt. 294, 6 Atl. 2d. 1. A jury trial was then had which resulted in a verdict for the claimants, Mary Ann Delligan, individually, and as administratrix of the estate of Barney Delligan, hereinafter called the plaintiffs, and the case is here on exceptions of the appellants, hereinafter called the defendants.

The evidence in the case was free from contradiction or dispute in any material respect and from it the following facts are disclosed. On April 18, 1911, Barney Delligan and his wife, Mary Ann, executed a mortgage, hereinafter called the Delligan mortgage, of certain premises to William E. Delligan, the brother of Barney. The condition of the mortgage was in substance that the mortgagors should furnish care and maintenance for William during his life, including food, clothing, spending money and medical attendance and at his death should provide for him a proper Christian burial and a monument.

The consideration for the mortgage was certain personal property transferred by the mortgagee to the mortgagors which included a mortgage known as the LePage mortgage, cash and a bank book.

Within a few days after the execution of the mortgage a deposit of a certain sum of money which constituted a condition of the same was made with an attorney "in accordance with the agreement between W. E. Delligan and Barney and Mary Ann Delligan."

The LePage mortgage which was in the principal amount of $1,900 was assigned by William to Barney and Mary Ann and the assignment recorded on April 20, 1911. At some time thereafter William went to the LePage home and demanded more interest and in the fall of 1915 he demanded payment of the mortgage debt. The parties met at the office of E. A. Ayers, an attorney, for the purpose of making the necessary arrangements in regard to payment. At the office at the time were Mr. and Mrs. LePage, William Delligan and Mr. Ayers. The LePages procured the necessary funds from the Swanton Savings Bank and Trust Company and the debt was paid in an amount conceded by the defendants in their brief to be $1,767.32. The mortgage was discharged by "E. A. Ayers Atty. for W. E. Delligan," the date of the discharge being October 26, 1915, and the discharge was recorded on that same day. On the same day the LePages gave a mortgage to the Swanton Bank for $2,000 on the premises covered by their mortgage to Delligan. On October 27, 1915, William Delligan deposited $1,767.32 in the Peoples Trust Company of St. Albans, which the defendants state in their brief was the money received from the LePages.

William Delligan died in January, 1937, and Barney in October of that same year.

Mrs. Delligan, who apparently was an elderly lady and who could not read or write, testified that she could recall nothing concerning the giving of the mortgage to William nor of the LePage mortgage. Her daughter, Helen Turnbull, who was familiar with the business transactions between her parents and William, testified that she knew nothing about the Delligan mortgage nor about her parents owning the LePage mortgage. Mrs. LePage testified that neither she nor her husband had received any written notice nor heard anything from Barney or Mary Ann concerning the LePage mortgage and that "there was never any question of Barney or his wife entering in this affair."

Mrs. Delligan testified that William had never told her, and, as far as she knew, had never told her husband that he had collected the money on the LePage mortgage.

William lived with Barney and his wife for about 45 years prior to his death. During that time their relations were very friendly. He was able to work until about 2 years before he died. During this last period he was ill a good deal of the time and was cared for by Mrs. Delligan and her daughter, Helen, and received the best of care.

After William's death these plaintiffs presented a claim to the commissioners on William's estate for his care in the amount of $6,240. The claim was allowed in the amount of $4,680. The Delligan mortgage was then discovered, the original of the same not having been in William's effects. It appears from the certified copy of the same that it was not discharged of record. The probate court ordered that the report of the commissioners be recommitted for hearing. A hearing was then had, the original claim disallowed, and one in the net amount of $3,012.40 allowed for money collected on the LePage mortgage. See, also, same case, *supra.* An appeal to the county court was taken by the defendants from this last allowance.

At the trial in the present case Mrs. Delligan testified that no claim for care for William was presented to the commissioners and that they never thought of such a thing, and that she did not know about one being presented. She also testified that during William's life he paid his doctors' bills. It also appeared from the evidence that bills for medical services, funeral expenses, a monument and for nurses had been paid by the administrator. Mrs. Delligan testified that Barney and she did not pay for some or all of these items because they had no funds to pay with. She also testified on cross examination as follows:

"Q. Now, asking you, Mrs. Delligan, about the board, did William have some understanding about payment of board with you?

A. No.

Q. Did he pay you anything for his board?

A. He paid me at first $12.00 and then he paid me 14 a couple of years after.

Q. And did he continue to pay $14.00?
A. Yes.

Q. That was true right up until his death?
A. Yes.''

The plaintiffs' declaration is in assumpsit on the common counts with a specification for money had and received. The defendants answered by general denial and a special plea of the statute of limitations. The plaintiffs filed a replication by way of a general denial and a special reply alleging fraudulent concealment by the deceased William of their cause of action.

The defendants made a motion for a directed verdict based on four grounds, the first and fourth of which are practically identical. This motion was denied and exceptions granted to the defendants.

It is stated as the first and fourth grounds of the motion that the evidence taken in the light most favorable to the plaintiffs fails to show that William Delligan was in his lifetime indebted to the plaintiffs in any sum whatsoever. Taking the evidence in the light indicated, as it must be, it is clear that this ground is untenable. From the evidence the jury could reasonably find that when William received payment of the LePage mortgage note the money so received belonged to the plaintiffs and that he fraudulently converted the same to his own use. This was so unless he rightfully received it as his own. In order to justify his actions the right so to collect and dispose of the money must have been given him by the plaintiffs. One method of conveying such right would have been a discharge of the Delligan mortgage by a mutual agreement to rescind the same which had been fully acted upon. The defendants claimed in oral argument and in their reply brief that the evidence conclusively shows a rescission and that this claim was brought to the attention of the court below in argument on the admission of certain evidence and is raised by fair implication at least in the first ground of the motion for a directed verdict. The plaintiffs take the opposite position and say that in any event the defense of rescission must be specially pleaded. There is authority for this latter statement. *Mark* v. *Stuart-Howland Co.,* 226 Mass. 35, 115 N. E. 42, 2 A. L. R. 678; 13 C. J. 738. See, also,

*Noyes et al.* v. *Pierce,* 97 Vt. 188, 193, 122 Atl. 896, to the effect that it is necessary that all matters relied upon as an affirmative defense should be specially pleaded. Whether this rule would extend to the present case or whether the question of rescission was properly raised below are questions that we are not called upon to decide, for it is clear that the evidence would not have warranted a direction of a verdict on this ground but this issue would have been one for the jury under proper instructions of the court. We shall have more to say farther on in regard to rescission in considering the exceptions to the charge.

The second ground of the motion was based on the statute of limitations, P. L. 1648. Here again, this question was for the jury as we shall show later in our discussion of the charge on this subject.

The third ground was that of the presumption of payment by the lapse of more than 20 years between the time of the deposit by William and his death. There was no plea of payment which is required when full payment is to be made as a defense in an action of assumpsit. *McDonald* v. *Place,* 88 Vt. 80, 85, 90 Atl. 948. Moreover, this presumption may be rebutted by circumstances showing that the claim is due and unpaid. *Tudor* v. *Taylor,* 26 Vt. 444, 451. Although there was no direct evidence as to this fact there was sufficient from which the jury could fairly and reasonably infer that such was the case. Consequently the presumption was of no help to the defendants. *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt. 6, 23, 192 Atl. 184, 192. There was no error in the denial of the motion for a directed verdict.

We will next consider the exceptions to the charge. The first was to the effect that the court erred in charging that the plaintiffs could sustain the proof of fraud alleged in their replication by a preponderance of the evidence on the ground that more than a preponderance is required in such a case. In their briefs the defendants claim that the degree of proof required is that of beyond a reasonable doubt and they cite several cases from this Court in support of their claim. Among those cited are *Patch* v. *Squires,* 105 Vt. 405, 165 Atl. 919; *Dunnett* v. *Shields & Conant,* 97 Vt. 419, 123 Atl. 626, and *Tillison* v.

*Tillison,* 95 Vt. 535, 116 Atl. 117. These were all actions in chancery having to do with the setting aside of written instruments and it has long been the law of this state that in such cases the claimed fraud must be proved beyond a reasonable doubt. The same rule applies in chancery to cases involving the reformation of written instruments on the ground of mistake. *Hitchcock* v. *Kennison,* 95 Vt. 327, 115 Atl. 156; *Fuller* v. *Knapp,* 82 Vt. 166, 72 Atl. 688. And the same standard of proof is also required of one who asserts that a testator intended that the provisions of the will made for his widow should be in lieu of her marital rights in the estate. *Phillips* v. *Northfield Trust Co.,* 107 Vt. 243, 179 Atl. 154.

■■ It has been stated in at least two of our opinions that in all civil cases only a preponderance is required. *Livanovitch* v. *Livanovitch,* 99 Vt. 327, 131 Atl. 799; *Foundry Mfg. Co.* v. *Farr,* 98 Vt. 109, 126 Atl. 548. These statements were unnecessarily broad in both cases. It would have been more accurate to have said that under our law the general rule is that in civil cases only a preponderance is required. The classes of cases cited in the last preceding paragraph may be considered as exceptions to the rule. This general rule applies to civil cases even though they involve fraud or crime as a determining fact. *Foundry Mfg. Co.* v. *Farr, supra,* and cases cited therein. See, also, *Livanovitch* v. *Livanovitch, supra.* This rule is in accord with the great weight of authority to the effect that one who is required to prove fraud need prove it only by a preponderance of the evidence. 24 Am. Jur. 118, sec. 278. We hold that the standard of proof required of the plaintiffs in respect to the replication comes within the general rule and that there was no error in the charge in this respect.

The next exception was to the failure of the court to charge the jury upon the statute of limitations. The charge of the court on this aspect of the case was as follows:

> ''Now, when William Delligan assigned the mortgage on the LePage property to Mr. & Mrs. Barney Delligan, he conveyed to them all of his rights not only to the debt but to the security for the debt.

Without more it became their property and they were entitled to it. If subsequently without right that mortgage was paid to William Delligan he thereupon received that money to the benefit and use of Barney Delligan and Barney Delligan's wife.

"Now, as the years went along by virtue of the fact that these two men (Barney and William) were brothers living together in the most intimate relationships of family life as brother and brother and brother-in-law and sister-in-law, the duty was cast upon William Delligan by the law to inform his brother and his brother's wife of what had occurred when that money was received by him from the LePages. If he did not inform them of that payment, then, so far as any limitations on this action is concerned, Barney Delligan's estate and Mrs. Barney Delligan are not precluded from bringing this claim before you." .

The defense of the statute was raised by the pleadings and was an important element in the case. The wording of the exception might have been better but it was sufficient to raise the question of whether there was error in respect to the charge on this issue.

The plaintiffs by their replication were apparently relying upon P. L. 1662 to save their cause of action from being barred by the statute. This statutory provision is as follows:

"When a person entitled to bring a personal action is prevented from so doing by the fraudulent concealment of the cause of such action by the person against whom it lies, the period prior to the discovery of such cause of action shall be excluded in determining the time limited for the commencement thereof."

It is clear that in order for the above provision to apply there must have been not only concealment by William

but that the same must have been fraudulent. The concealment contemplated by the statute must be with a design to prevent the discovery of the facts which gave rise to the action. *Murray* v. *Allen*, 103 Vt. 373, 378, 154 Atl. 678; *Watts* v. *Mulliken's Estate*, 95 Vt. 335, 340, 115 Atl. 150. The plaintiffs in support of the court's refusal to direct a verdict claim that the facts show conclusively that William when he received the LePage money became a constructive trustee of the same for the plaintiffs, thus preventing the running of the statute until they knew or should have known the facts. They cite *Hall* v. *Windsor Savings Bank*, 97 Vt. 125, 137, 121 Atl. 582, 124 Atl. 593, as authority for this statement. But whether the cause of action is saved because of P. L. 1662 or because there was a constructive trust it is evident that in either case fraud on the part of William must be shown. Without it there could have been no ''design to prevent the discovery'' within the meaning of the cases heretofore cited. The plaintiffs having alleged an exception to the statute the burden was on them to prove it. *Capen* v. *Woodrow*, 51 Vt. 106; 37 C. J. 1244, sec. 770. As has already been indicated, there was evidence in the case from which the jury could have reasonably found that the Delligan mortgage was rescinded by a mutual agreement which had been fully acted upon. Without reviewing the facts heretofore set forth it is sufficient to say that among them, in support of the above are: the evidence as to payment of board, the lack of knowledge by Mrs. Delligan and her daughter of the Delligan mortgage or the LePage mortgage, the testimony of Mrs. LePage, the presentment of the claim for care and the failure to pay certain expenses called for under the original agreement. There was evidence to the contrary which need not again be reviewed. By this conflict a jury question was raised on this issue.

On this claim of fraud no question can arise as to the necessity of special pleading, for this defense goes to the very essence of the claim. It denies any fraud. If William had the right to the money there was no fraud in concealing the fact that he had received it nor in appropriating it to his own use. If possessed of this right there was no legal duty to inform Barney and Mrs. Delligan of what he had done.

 The fact that the mortgage was under seal cannot alter the situation. We have held repeatedly that an oral agreement relating to a covenant in a sealed instrument and which has been acted upon may be shown as a defense of waiver in an action on the instrument based on the breach of such covenant. The cases are collected and discussed in *Martin* v. *Martin & Carpenter*, 98 Vt. 326, 328, 127 Atl. 292, 55 A. L. R. 697. The principle upon which this rule is based is that it would be a fraud upon the party acting upon such waiver to be thus misled by the party to whom he was obligated. *Hunt* v. *Allen*, 73 Vt. 322, 50 Atl. 1103.

 Whatever may have been the rule formerly of the common law it is now held in the great majority of the cases that a sealed executory agreement may be rescinded by a parol agreement which has been acted upon. 17 C. J. S. 867, sec. 378; 880, sec. 388; 12 Am. Jur. 1012, sec. 432. That this is the law of this state and comes within the principle of the defense of waiver heretofore noted is shown by the language of Taylor, J., in the *Martin* case, *supra,* at page 328 where speaking for the Court he said:

> "It is well settled that an executory contract under seal cannot be modified by parol so as to interpose a new element or add new terms, which can be accomplished only by a writing. But it is equally well settled that a waiver of a covenant by the party for whose benefit it is inserted may be made by parol. Such waiver is held not to be a modification or change in the terms of the original agreement, but is deemed within the rule that a contract under seal may be released, surrendered, or discharged by matters *in pais. Becker* v. *Becker,* 250 Ill. 117, 95 N. E. 70, Ann. Cas. 1912B 275. The doctrine is of general application and confined to no particular class of cases. *Clark* v. *West,* 193 N. Y. 349, 86 N. E. 1."

See, also, *Agel & Levin* v. *F. R. Patch Mfg. Co.,* 77 Vt. 13, 15, 58 Atl. 792, wherein it is said:

> "Even a contract under seal may be discharged
> by the performance of a subsequent parol agree-
> ment."

██ The agreement to rescind need not be express, but may
be inferred from the circumstances. 3 Williston on Contracts,
sec. 1826, 17 C. J. S. 880, sec. 388. The evidence as to an exe-
cuted parol agreement was for consideration by the jury as a
defense to the claim of fraud in the plaintiffs' replication.

██ The court, though not requested, was required to
instruct the jury upon every essential part of the case. *Stoddard
Brothers* v. *Howard*, 101 Vt. 1, 139 Atl. 776; *Bradley* v. *Blandin
and Somerset Land Co.*, 94 Vt. 243, 256, 110 Atl. 309. An ex-
amination of the charge shows that the court failed in its duty
in respect to the subject matter under discussion. Nowhere is it
pointed out that the burden was on the plaintiff to show fraudu-
lent concealment on the part of William in order to avoid the
statute. Fraud is not mentioned. It is true that in the first
part of the quoted portion of the charge the court says: "If sub-
sequently without right," etc., in reference to the receipt of the
money by William but, giving the plaintiffs full benefit of this
statement, it was not enough. The court should have instructed
the jury how under the evidence such a right could have been
had, along the lines and substantially in the manner indicated
herein. This defense of the statute of limitations and the claimed
exception to its application required full and explicit instruc-
tions to the jury. It is quite possible that if so instructed the
jury would have found against the plaintiffs on this issue. The
instructions given were virtually a direction to find in favor of
the plaintiffs on this phase of the case. Such failure to instruct
must be held to be reversible error. *Bradley* v. *Blandin and
Somerset Land Co., supra; Hazard* v. *Smith*, 21 Vt. 123.

The remaining exceptions to the charge are based on the
grounds that the portions so excepted to were not warranted by
the evidence. It is sufficient to say in disposing of these excep-
tions that no error based on any of the stated grounds appears
in respect to such instructions.

The defendants have briefed an exception to the exclusion
of questions asked of Mrs. Delligan on cross-examination in re-
gard to a talk she had with her attorney concerning the present-

ment of the claim for care. The questions were objected to on the ground of privileged communications and were excluded. The defendants claim that this privilege had been waived by the voluntary testimony of the witness in response to questions on this subject asked of her by her attorney on direct examination.

The questions and answers on direct examination were as follows:

"Q. I talked with you at your house, did I not, before we went to court?

A. Yes.

Q. And whether or not you instructed me to do what I thought should be done?

A. Yes."

On cross-examination the excluded questions were: "Mrs. Delligan, when Mr. Warner talked with you at the house about this case did you tell him that William Delligan paid his board?", and upon the exclusion of this question the further one: "Did you at that time tell your attorney, Mr. Warner, all about the existing affairs and the former relationship as to care and support of William Delligan?"

█ █ It is unnecessary to determine whether the privilege was waived or whether this was a proper curtailment of cross-examination for it does not affirmatively appear that the defendants were prejudiced by the exclusion and consequently the error, if any there was, would not warrant a reversal. Supreme Court rule 9; *State* v. *Fairbanks*, 101 Vt. 30, 34, 139 Atl. 918. The most that is claimed by the defendants for their questions is that the answers to them whether affirmative or negative would tend to discredit the witness. It seems that the defendants received full benefit in this respect from the testimony of this witness in regard to the payment of board and from the testimony of other witnesses in respect to the presentment of the claim for care so that the exclusion was harmless.

█ The defendants made a motion to set the verdict aside but since it appears there was prejudicial error in the charge the judgment cannot stand and therefore we give this question no

consideration. *In re Jones' Estate,* 110 Vt. 438, 8 Atl. 2d. 631, 637.

■ There is one question left to consider which is raised by the plaintiffs for the first time in their brief. The court charged in effect that the jury should consider in mitigation of damages any amounts which William paid in his lifetime or that his estate has paid since his death which the plaintiffs were obligated to pay under the terms of the Delligan mortgage. A special verdict was submitted and returned awarding the plaintiffs the face of the LePage mortgage plus interest of 6% less a setoff of $870. This latter amount consisted of sums for masses, a doctor's and undertaker's bill and one for a monument. Nothing was allowed for board paid by William and in this respect there was no such error as claimed by the defendants, for though the evidence as to said payments tended to show a rescission by oral agreement acted upon, as we have already shown, it was too speculative to be a proper basis for determination as to amount, for the periods which the payments covered were not shown nor could they be reasonably inferred with sufficient accuracy from any evidence in the case.

The plaintiffs in their exceptions to the portion of the charge relating to damages expressly stated that the same did not apply to the items allowed by the jury in mitigation but they now say that except for the doctor's bill such items were improperly allowed because the subject matter of this litigation is a claim presented to the commissioners and such a claim can be composed of only such matters as accrued as debts of the deceased during his life and consequently the court had no jurisdiction over the subject matter of said items, with the exception noted, and that this is a jurisdictional question which can be raised here for the first time.

There is considerable question as to whether the defendants introduced evidence of these items as mitigation of damages, but be that as it may, they were properly received and submitted to the jury for that purpose.

■ It is true that this action is not based directly on the Delligan mortgage but on an implied promise to pay money claimed to have been fraudulently taken and kept from the plaintiffs. The whole theory of the plaintiffs' case, however, was

that this mortgage had been valid and existing from the time of its execution up to the time of trial. Their right of recovery was premised on that ground. The implied promise sued on arises out of the mortgage and the terms and conditions of the same. Such promise and the said mortgage are so closely connected as to form the broad subject matter of this litigation. This being so, the defendants would be entitled to recoup for any financial detriment suffered by them by reason of the failure of the plaintiffs to perform any obligations imposed upon them under the mortgage. The plaintiffs in their brief admit this to be so as to such obligations which were violated prior to William's death. The same rule applies to such coming within the terms of the mortgage and which were not to accrue until after death. The position of the plaintiffs would be well taken in respect to the items in question if the same were matters wholly independent of the presented claim, but this is not the case.

The plaintiffs also claim that the said items come under the provisions of P. L. 2870-2871 and should be disposed of thereunder and that they are already the subject of litigation on appeal from the allowance of the administrator's account. The sections of the statutes which the plaintiffs rely upon provide for the submission to arbitration of disputed claims between an executor or administrator in his representative capacity and another person or between an executor or administrator and the estate that he represents. If we assume that they apply to the items in question, the form of procedure therein provided is not exclusive. *Powers* v. *Douglass*, 53 Vt. 471, 38 Am. Rep. 699. By recoupment in this proceeding circuity of action is avoided. Any question of conflict with the other pending case referred to can be avoided by continuing the same until the case at hand has been disposed of. A special verdict in the latter may well settle all matters involved in such other case which relate to the questioned items.

*Judgment reversed and cause remanded.*