James P. Mahoney, Special Administrator of the Estate of Theodora A. Peck v. Bernard J. Leddy, Administrator of the Estate of Teresa C. Egan

[ 223 A.2d 456 ]

June Term, 1966

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed October 4, 1966

*Black, Wilson and Hoff* for plaintiff.

*McNamara and Larrow* for defendant.

**Barney, J.** Miss Peck, a well-to-do spinster, and her long-time companion-housekeeper, Miss Egan, attempted to dispose of certain property interests between them during their lifetime. The consequence was the one thing they presumably sought to avoid, litigation between their estates. Thirty-six shares of American Telephone and Telegraph common stock, transferred in 1945 to the name of Miss Egan, have now become a substantial property interest through stock splits and market advances. The shares were in Miss Egan's possession at her death in July, 1963, six months prior to the death of Miss Peck. The plaintiff, special administrator of Miss Peck's estate and sole legatee under her will, brought this action to recover the shares of stock, alleging they were held in trust. Miss Egan's administrator, as defendant, resisted the action.

The plaintiff's claim is principally evidenced by the following writing:

"'I, Teresa C. Egan, on oath depose and say:

THAT Theodora A. Peck was the owner of thirty-six shares of American Telephone and Telegraph Common stock; that she caused these shares to be put in the joint name of herself and myself; later, under date of May 3, 1945, these shares were again transferred from Miss Peck and myself so that a new certificate (No. A447511) for thirty-six shares of said stock was issued in my name alone.

THIS IS TO CERTIFY THESE FACTS: To state that in the event of my death prior to that of Miss Peck, the stock belongs to Miss Peck and I have no interest in the same; it is, however, the wish of Miss Peck that I become the outright owner of these shares should I survive her.

Dated at Burlington, this 22nd day of November, 1946.

*s/Teresa C. Egan*

In presence of:
*s/Louise M. Converse*

STATE OF VERMONT
CHITTENDEN COUNTY, ss.

At Burlington in said County, this 22nd day of November, A.D. 1946, before me personally appeared the above named Teresa C. Egan, and made oath, in due form of law, to the truth of the matters contained in the foregoing affidavit.

*s/Louise M. Converse*
Notary Public"

The defendant does not question the objectives of the instrument, nor deny that the transfers took place as it states. It is his position that the law does not permit their accomplishment in this manner unless done by a writing executed with the formalities required of testamentary instruments, since, he says, this is a testamentary transfer.

He also says that the evidence does not support the Chancellor's determination that this stock was held in trust. This determination is a question of law based on the evidence in the case, and may properly be reviewed by this Court in order to correct or con-

firm the legal conclusion reached below. *Vilas* v. *Seith,* 108 Vt. 526, 530, 189 Atl. 862.

■ We agree with the Chancellor that the evidence in this case sufficiently establishes a trust relationship. We disagree with the conclusion that the trust was "created" by the instrument executed by Mis Egan. The legal effect of that instrument, as a conclusion of law, is also open to determination by this Court. *Dieter* v. *Scott,* 110 Vt. 376, 383, 9 A.2d 95. We find it to be an acknowledgment by Miss Egan that she held only the bare legal title to the stock, with beneficial ownership remaining in Miss Peck. This is characteristic of trusteeship. See *Ladd* v. *Brandon Fire Dist.,* 124 Vt. 350, 352, 205 A.2d 411. Had Miss Peck established a trust with herself as trustee, the type of unequivocal declaration called for in *Methodist Church* v. *First Nat. Bank,* 125 Vt. 124, 129, 211 A.2d 168 would be necessary to establish the change in the nature of her ownership of the property. But where another is made trustee, the transfer of title to the property to the trustee is evidence of the consummation of the trust.

■ A trust involving only personal property may be instituted without being reduced to writing. *O'Brien* v. *Holden,* 104 Vt. 338, 346, 160 Atl. 192. As that case points out, failure to establish the manner in which the trust property is to be handled, or how it is to be applied to the benefit of the beneficiary does not negate or invalidate the trust arrangement. See also *Smith* v. *Deshaw,* 116 Vt. 441, 447, 78 A.2d 479. It is sufficient if the arrangement established by the evidence is shown to have been brought into being under an intent and for objectives consistent with the proper purposes of a trust. *Dieter* v. *Scott, supra,* 110 Vt. 376, 389. The nature of the transaction and the relation of the parties may contribute to the proof of the fiduciary relationship. *Conn. River Savings Bank* v. *Albee,* 64 Vt. 571, 575, 25 Atl. 487.

■ Trusts may be proved by the declarations of the trustee. *Conn. River Savings Bank* v. *Albee, supra,* 64 Vt. 571, 579; *Drew* v. *Corliss,* 65 Vt. 650, 655-6, 27 Atl. 613. An acknowledgment of the existence of a trust by one who holds legal title to personalty are refutations of absolute ownership, and binding as declarations against interest on the trustee and his successors. *Conn. River Savings Bank*

v. *Albee, supra.* The law allows a written statement by a trustee to fulfill the requirement of 27 V.S.A. §303 that trusts concerning lands must be created or declared in writing. *Straw* v. *Mower,* 99 Vt. 56, 63, 130 Atl. 687. That case also points out a circumstance that is applicable here. A parol trust will be upheld at the instance of either the trustee or the beneficiary, when it has been fully performed. Since the trust in this case terminated on the death of the principals, its distributive provisions are now enforceable.

The facts found below not only evidence that there was a trust arrangement, but indicate that it was performed during the lifetime of the settlor and trustee. Miss Egan had general control of finances, wrote checks, made most of the decisions relating to the operation of the household and purchased and prepared the food for the two of them. She did the banking and paid bills for Miss Peck, who was in poor health during most of this time. Miss Peck was no stranger to trust arrangements, since most of her property, of which she had the life use, had been put in trust more than forty years before she died. Since the trust here in question has been completed, the fact that the evidence does not develop the specific duties of the trustee is not critical. This litigation deals with devolution of the stock upon termination of the trust, and, as to that, the evidence is clear.

 Nor is the trust testamentary, as claimed by the defendant. Testamentary instruments are those that operate only upon and by reason of the death of the maker. *Straw* v. *Mower, supra,* 99 Vt. 56, 64. Here, legal title passed from Miss Peck to Miss Egan many years before either died, and, as the *Straw* case says, the mere fact that there was a final disposition of the property upon the death of one or both principals does not make it testamentary.

Underscoring the nature of the arrangement is the preliminary placing, by Miss Peck, of the stock in joint ownership. This, if it had persisted, would have accomplished a distribution like that set out in the written memorandum before us. Whatever Miss Peck's basis for instigating the shift to the admittedly more flexible trust form, there is no justification for the courts to forbid its performance where no illegality appears.

*Decree affirmed.*