## Gelsie J. Monti and Waldron C. Biggs v. Granite Savings Bank and Trust Co. and George E. Milne

[333 A.2d 106]

No. 112-74

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed February 4, 1975

*Donald E. O'Brien, Esq.*, Burlington, for Plaintiff.

*Thomas F. Heilman, Esq.*, of *Richard E. Davis Associates*, Barre, for Defendant.

**Smith, J.** This is an appeal taken by the plaintiffs, Monti and Biggs, from a judgment order on a directed verdict in favor of the defendants, the Granite Savings Bank and Trust Company and George E. Milne, which terminated a jury trial on May 23, 1974. The principal question presented to this Court involves the admissibility of evidence, offered by the plaintiffs to prove the purpose of a trust, which was excluded by the trial court.

The corpus of the alleged trust consists of stock certificates representing 1,262 shares of preferred class B stock of the Barre Trust Company. This financial institution no longer exists, having been merged with the Merchants National Bank of Burlington, Vermont, on July 7, 1970.

In 1938 one Frank Langley was president of the Barre Trust Company and owned, in an individual capacity, the 1,262 shares of the preferred stock. In that year and shortly before his death he transferred the stock certificates, endorsed in blank, to a Mr. Wishart. Wishart was a commissioner and appraiser of Langley's estate, and he did not include the certificates in this estate's inventory. They were still among Wishart's effects when he died in 1956, when they were found by one of the defendants, George Milne, who was co-executor of Wishart's estate. Milne did not include them in Wishart's estate's inventory.

The certificates were kept in deposit at the defendant bank until 1961. Then, entering into an indemnification agreement with the heirs of Langley, the defendants purchased the heirs' interest in the shares. This stock was eventually redeemed by

the Merchants National Bank at the same time it purchased the common stock of the Barre Trust Company.

Defendant Milne, who is president of the defendant bank, testified at the trial below that Wishart informed him that Langley had given him, Wishart, the certificates but, as for what purpose or in what capacity Wishart held them, no information had been volunteered.

The plaintiffs alleged that they were common stockholders of the now defunct Barre Trust Company. The basis of their action is that Langley set up a trust with the preferred stock owned by him for the benefit of the common stockholders of the Barre Trust Company, and that, as former owners of a portion of such common stock, they had a beneficial interest in these shares and a right to the gains realized when the preferred shares were redeemed by Merchants. They claim that the defendants fraudulently obtained title to these certificates and concealed the acquisition from the plaintiffs.

At trial the plaintiffs offered the testimony of Biggs to the effect that Wishart, at a board meeting of the Barre Trust Company in the 1940's, stated that Langley had given the certificates to him to be held in a trust for the benefit of the common stockholders of the Barre Trust Company. Biggs was the only person still alive at the time of trial who was present at that meeting. The lower court admitted the evidence of Biggs as a declaration against interest on the part of Wishart to show the establishment of the trust, but it sustained the objection of the defendants as to its allowance to show the purpose of the trust on the ground that "Mr. Biggs' statement to that effect would be a self-serving declaration."

It is certain that the declaration of purpose, offered by Biggs, supports his allegations. Naturally the testimony of parties is given in favor of their cause. But Biggs' testimony as to Wishart's declaration as to the purpose of the trust was not excludable as a self-serving declaration. We believe that the lower court labored under a misunderstanding as to what constitutes a self-serving declaration. "A self-serving declaration is one made by a party in his own interest at some place and time out of court, and it does not include testimony which he gives as a witness at the trial." 31A C.J.S. *Evidence* § 216, at 590. An example of a self-serving declaration is found in

*Pettengill* v. *New Hampshire Insurance Co.*, 129 Vt. 23, 27, 270 A.2d 883 (1970). There a lawyer appearing as a witness was prevented from testifying about letters he had written to another attorney relating to the former's belief in the existence of a damages division agreement in a prior case because such letters were self-serving, because made in his own interest at another time and place than in court.

The court's reason for excluding the testimony was improper, and we have been shown no other rationale justifying exclusion. "Trusts may be proved by the declarations of the trustee." *Mahoney* v. *Leddy*, 126 Vt. 98, 101, 223 A.2d 456 (1966). Where a trust involves only personal property, as this alleged trust does, "failure to establish the manner in which the trust property is to be handled, or how it is to be applied to the benefit of the beneficiary, does not negate or invalidate the trust agreement." *Id.* Declarations by the trustee as to whom the beneficiary is are also admissible. *Connecticut River Savings Bank* v. *Albee*, 64 Vt. 571, 579, 25 A. 487 (1892).

The defendants here argue that the cases cited by the plaintiffs of *Mahoney* v. *Leddy, supra,* and *Connecticut River Savings Bank* v. *Albee, supra,* are only to the effect that declarations of a trustee are only binding on the trustee and his successors, as against their interests. The argument is made that no one here is claiming under Wishart.

Overall relevancy, rather than a narrow privity concept, is the criterion for determining admissibility of declarations against interest, 31A C.J.S. *Evidence* § 217, at 606, unlike the situation where admissions by parties are considered. "The statement to be admissible as a declaration against interest need not be made to a person adverse to a declarant. It may also be made to one united in interest or to a neutral party." *Id.* at 602.

> [W]hen the statements were those of a nonparty declarant . . . and the position of the declarant is found not to meet the requirements of "privity" necessary to class him as a party's predecessor, then the theory of declara-

tions against interest may be a case-saving ticket of admission.

C. McCormick, EVIDENCE § 276, at 671 (2d ed. E. Cleary 1972).

The existence of the trust and identification of themselves as the beneficiaries thereof were essential to the establishment of any cause of action by the plaintiffs; the relevance of the declaration cannot be disputed. The credibility of the testimony of witness Biggs would, of course, have been a question for the jury if the case had been allowed to go to the fact finding body. In essence the lower court, by its bifurcation of the declaration, admitted the testimony of Biggs to prove the existence of a trust but disallowed the testimony as to whom the beneficiaries were. Certainly, where the corpus consisted of stock certificates endorsed in blank, both portions of the offered testimony were against Wishart's interest at the time he spoke. We find this bifurcation to have been error, and a new trial must be granted.

The defendants, in addition to briefing arguments to sustain the directed verdict in their favor, have raised several other questions. They first assert that the action of the plaintiffs was barred by the applicable statute of limitations, 12 V.S.A. § 511. Evidence was offered by the plaintiffs that they had asserted, for a number of years, their claim to any beneficial interest under the trust and that they had not been informed when the transfer of the class B stock was made. *See* 12 V.S.A. § 555.

■■ The pleading of the statute of limitations is an affirmative defense, V.R.C.P. 8(c), and the burden of proof would have been on the defendants to establish such defense, had the cause not been terminated by the directed verdict. Had the case been allowed to continue, the plaintiffs would also have had an opportunity to introduce more evidence themselves, and to rebut any evidence offered by the defendants. Whether or not the defendant's claim of a bar of the action by the statute of limitations had merit, as well as whether or not there was actual or constructive fraud, were both questions of fact which would have to be decided by the jury. *Estate of Delligan,* 111 Vt. 227, 237, 13 A.2d 282 (1940).

Defendants also excepted to the exclusion of an exhibit offered by them, a document found among the papers of Mr. Wishart after his death by Mr. Milne. This document was not signed by Langley, and there is no evidence whether or not he approved the contents of it. No error is found in the ruling below on this matter.

The defendants also assert that no proof was offered by the plaintiffs that they were the owners of the common stock which was to be benefited by the alleged trust. If this assertion were true, it is irrelevant at this time. The plaintiffs did not present their complete case, through no fault of their own. Cf. *Baird* v. *Eldredge*, 132 Vt. 618, 619, 326 A.2d 171 (1974). After the lower court's exclusionary ruling on the crucial offered testimony concerning the trust, the plaintiffs would have gained nothing by presenting evidence on other elements of their cause. That the evidence presented prior to the court's erroneous ruling may not have covered all other necessary elements does not aid the defendants, since there is no rule specifying that testimony must be presented in any specified order. Cf. *Valeo* v. *Valeo*, 132 Vt. 526, 528, 322 A.2d 306 (1974).

We are not saying that, with respect to many of the supplemental issues raised by the defendants, the plaintiff's case was deficient. A search of the current record would be premature, and even more unnecessary where a new trial is required.

*Reversed and remanded.*