*Luke v. State of Vermont et al.*, No. 233-7-16 Frcv (Hoar, J., July 12, 2017).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Franklin Unit | CIVIL DIVISION<br>Docket No. 233-7-16 Frcv |
| NORMA LUKE,<br><br>   Plaintiff<br><br>   v.<br><br>STATE OF VERMONT, JANET<br>NICHOLS, TOWN OF SHELDON,<br>   Defendants<br><br>JANET NICHOLS,<br>   Third-Party Plaintiff<br><br>   v.<br><br>A. GREGORY RAINVILLE,<br>   Third-Party Defendant | DECISION ON MOTIONS |

This case comes before the court on motions to dismiss filed by the State of Vermont and Third-Party Defendant, A. Gregory Rainville ("Rainville"). The court heard argument on May 26, 2017. For the reasons set forth below, the court grants the State's motion, and denies Rainville's.

## **BACKGROUND**

This is a dispute over legal access to a parcel owned by Plaintiff at 31 Fern Ledge Road, Sheldon, Vermont ("the Property"). In 1991, Rainville subdivided lands he owned, creating the Property and another parcel to its north (the "northerly parcel"). On their westerly border, these parcels abut the Missisquoi Valley Rail Trail ("Rail Trial"), presently owned by the State; when or how the State became the owner does not appear. On December 6, 1991, Rainville conveyed the Property to Defendant/Third-Party Plaintiff Janet Nichols, giving her a warranty deed. On April 21, 2000, Nichols in turn conveyed via warranty deed to Plaintiff Norma Luke.

Both deeds warrant that the Property benefits from easements to cross the Rail Trail in two locations. The first of these is adjacent to the northerly parcel, with the other closer to the Property (respectively, "northerly crossing" and "southerly crossing"). The deeds also purport to

grant the right to travel in a southerly direction along and within the easterly limits of the Rail Trail from these crossings to the Property.

The validity of these purported easements is at the heart of this case. Neither of the former Rainville parcels abuts a public road; as far as appears, the only practical access to a public road requires crossing the Rail Trail. The northerly parcel has access over the northerly crossing, pursuant to a July 1991 agreement between Rainville and the Vermont Department of Transportation ("VTrans"). As a condition of subdivision approval, however, the Town of Sheldon prohibited the Property from using the northerly crossing. The Town instead required that the Property use the southerly crossing. Nevertheless, Luke and Nichols periodically used the northerly crossing, and Luke alleges she was only informed in 2009 of the condition precluding its use. *Compl.*, ¶ 42. Also in 2009, the owner of the northerly parcel blocked Luke's use of the northerly crossing. *Id.*, ¶ 18.

Denial of access via the northerly crossing may not have been an issue, but for the fact that there appears to be a question whether there is in fact deeded access over the southerly crossing. Luke alleges there is no deeded right to cross the Rail Trail at the southerly crossing. *Id.*, ¶ 14. If she is correct, the Property is landlocked.[1]

On these alleged facts, Luke has sued Nichols, the Town, and the State. The complaint alleges breach of covenant of warranty against Nichols (Count I), easement by necessity against the State and the Town (Count III), prescriptive easement against the State and the Town (Count IV), and equitable estoppel against all defendants (Count V). (There is no Count II.) Nichols in turn sued Rainville for breach of the covenants of seisin and warranty. The State moved to dismiss all claims against it; Rainville moved to dismiss the third-party complaint.

---

[1] It bears observing that in his answer, Rainville asserts that, "The easements existed before the State took title to the railroad property, which was already encumbered by the easements." *Answer to TP Am. Compl.*, ¶ 7. While the court cannot consider this assertion in determining the sufficiency of either the Complaint or Amended Third Party Complaint, *see Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (in reviewing a motion to dismiss for failure to state a claim the court assumes "as false all contravening assertions in the defendant's pleadings"), it does suggest the basis for a colorable claim—not yet properly pleaded—against the State.

## ANALYSIS

### I. State's Motion to Dismiss

#### A. Easement by Necessity

Count III seeks to establish an easement by necessity "across the Railroad Line." *Compl.*, ¶ 36. The State argues that easement by necessity is only available over the remaining lands of a common grantor; because the Rail Trail is not part of any predecessor grantor's remaining lands there can be no easement by necessity. *MTD* at 6. Luke counters that she is merely required plead there was (1) division of commonly owned land that (2) resulted in creating a landlocked parcel. *See Opp*. at 4–5.

The very case Luke cites refutes her argument. That case makes clear that "when, as a result of the division and sale of commonly owned land, one parcel is left entirely without access to a public road, the grantee of the landlocked parcel is entitled to a way of necessity over the remaining lands of the common grantor or his successors in title." *Berge v. State*, 2006 VT 116, ¶ 6. Here, there is no allegation of any division of commonly owned land that created a landlocked parcel; the only division that appears in the pleadings is Rainville's 1991 subdivision. To the extent that the easements he purported to convey do not exist, it is not the subdivision but some prior conveyance that landlocked the Property.

Moreover, easement by necessity requires "former unity of ownership" between the putative servient and dominant estates. *Tracy v. Atherton*, 35 Vt. 52, 56 (1862). "Only if the cause of the landlocking can be traced back to a particular conveyance does the common law provide a solution. The common-law solution is limited to providing access over or through property *held by the grantor at the time of the conveyance*." Restatement (Third) of Property (Servitudes) § 2.15 (2000) (emphasis added). The complaint alleges neither unity of ownership of the Property and any part of the Rail Trail, nor a division of such commonly owned land resulting in landlocking of the Property. Thus, there are no facts or circumstances that would entitle Luke to an easement by necessity over the Rail Trail.[2]

---

[2] If the doctrine of easement by necessity could be said to apply at all in this case, it might be applied *over the northerly parcel* to allow passage from the Property to the northerly crossing, and thence to the public road. That route, however, is apparently foreclosed by the Town's subdivision conditions.

## B. Easement by Prescription

Count IV seeks an easement by prescription over the northerly crossing. Luke claims that between 1991 and 2009 she and, before her, Nichols periodically used the northerly crossing in a manner that was open, notorious, and hostile. *Compl.*, ¶¶ 43–45. Luke's own allegations, however, defeat this claim. She alleges that the State granted the Property a deeded right to use the northerly crossing. This allegation alone is fatal to any adverse possession claim.

"To establish a prescriptive easement, plaintiff's use of the land must have been open, notorious, continuous for fifteen years, and hostile or under claim of right." *Schonbek v. Chase*, 2010 VT 91, ¶ 8, 189 Vt. 79 (internal quotation marks omitted). There can be no prescriptive easement if the use is permissive. *See Guibord v. Scholtz*, 2006 VT 22, ¶ 5, 179 Vt. 623. Equally (and obviously), if the use is by deeded right, there can be no adversity. *See, e.g., Mill Pond Condo. Ass'n v. Manalio*, 2006 ME 135, ¶ 9; *Charlebois v. Lobe-A Prop. Owners Inc.*, 193 A.D.2d 916, 918 (N.Y. App. Div. 1993) ("Supreme Court properly dismissed [plaintiff's] claim for a prescriptive easement as her deed contained an express easement."). Indeed, while Luke purports to assert adverse possession against the State, her complaint makes clear that there is no controversy in this regard, as her right to use the northerly crossing has not been encumbered by the State. *Compl.*, ¶¶ 10, 15–17. Instead, Luke alleges that it is the Town that has denied her use of the northerly crossing. *Id.*, ¶¶ 12, 20. Such denial, however, does not give rise to any claim against the State.[3]

## C. Equitable Estoppel

The final count against the State alleges equitable estoppel. Luke alleges that all defendants were aware of the lack of approved access when Luke purchased the Property, but through "representations, actions[,] or inactions led Plaintiff to believe that she could access the Property via the existing crossings and her existing driveway." *Compl.*, ¶ 51. This allegation, however, is not sufficient to state a claim.

The elements of estoppel are:

---

[3] This conclusion obviates the necessity of determining whether an adverse possession could ever lie against the State. The Supreme Court has observed, "[p]ublic lands generally are statutorily exempted from adverse possession, even if such possession is open and notorious." *Benson v. Hodgdon*, 2010 VT 11, ¶ 14, 187 Vt. 607. Whether any exception to this rule might apply here is mooted by the observation that Luke has failed to plead hostile use.

(1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment.

*In re Lyon*, 2005 VT 63, ¶ 17, 178 Vt. 232. Here, Luke fails to allege any State action on which she relied and on which the State intended that she rely. Instead, her allegations are vague and conclusory. This is insufficient; on a motion to dismiss, the court is not required to credit unsupported conclusory allegations. *See Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1.

Moreover, equitable estoppel is not a cause of action, but an affirmative defense. *See Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 221 (2001) ("estoppel, waiver and laches are all affirmative defenses; they are not causes of action that provide a basis for a lawsuit"); *Vermont Nat. Bank v. Dowrick*, 144 Vt. 504, 508 (1984) ("Estoppel is not a cause of action in and of itself cognizable as a counterclaim."); *see also* V.R.C.P. 8(c). Even where asserted as a valid defense, "estoppel is not a defense that should be readily available against the state." *Lyon*, 2005 VT 63, ¶ 16 (internal brackets omitted). Rather, one invoking the doctrine against the government must demonstrate that "the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case." *Id.*, ¶ 17 (internal citations omitted). Here, there is no allegation to support such a conclusion. Thus, at least on the allegations currently before the court, equitable estoppel is not properly in the case.

### D. Whether the State is a Necessary Party

Luke argues separately that the State is necessary party. She invokes V.R.C.P. 19(a). That rule requires joinder if "in the person's absence complete relief cannot be accorded among those already parties." Luke's argument presumes that one can be a party even if there is no cause of action to which that person is properly a plaintiff or defendant. She provides no support for this theory. The rule suggests otherwise; it plainly contemplates joinder as plaintiff or defendant to some claim in the case. *See* V.R.C.P. 19(a) ("If the person should join as a plaintiff but refuses to do so, the person may be made a defendant."). Thus, not surprisingly, courts have rejected similar attempts to add as a "necessary party" one as to whom there is no viable claim. *See Battles v. Russell Cty., Ala.*, 2013 WL 4029289, at *12 (M.D. Ala. Aug. 7, 2013) ("[Plaintiff] has not cited any authority as to why, when no viable claim is pending against the Russell County

Defendants, complete relief cannot be afforded among the parties in their absence. *See* Fed. R. Civ. P. 19(a)(1).").

Luke's argument rests on a fundamental misreading of Rule 19. Recognizing that the optimal outcome, for her, would be some form of access across State property, she deems the State's participation necessary to her attaining the complete relief she seeks. That approach, however, misframes the question under Rule 19. The rule asks not if complete relief can be granted *to* one or more of the parties, but *among* those who are properly parties. V.R.C.P. 19(a); *see also Dwyer v. Bicoy*, 2008 WL 5381485, at *6 (D. Colo. Dec. 22, 2008) (finding arguments similar to Luke's "misdirected because they incorrectly presuppose that Rule 19(a)(1)(A) requires the joinder of parties whose absence would preclude the Court from according complete relief *to the existing parties*, not '*among the existing parties*' " (emphasis in original). Here, Luke has a fully adequate remedy against Nichols (and to the extent that she has a valid claim, also against the Town), and that relief can be granted without any participation from the State. That this is not her preferred remedy does not change the observation that without the State's participation, complete relief can be afforded *among* those properly party to the case. In short, unless and until the State asserts a claim against Luke or another of the parties, or she or another party asserts a valid claim against the State, the State is not a necessary party.

## II. Third-Party Defendant Rainville's Motion to Dismiss

### A. Covenant of Seisin

Rainville argues that the claim for breach of covenant of seisin is time-barred. In support of this argument, he cites Vermont's lone case on the subject, *Pierce v. Johnson*, 4 Vt. 247 (1832). There, the Court observed that the covenant of seisin is "broken at the execution of the deed," causing the statute of limitations to run from the date of execution. *Id.* at 255.

The provision at issue is 12 V.S.A. § 503. That statute states, "[a]ctions brought on a covenant of seisin in a deed of conveyance of land, shall be brought within fifteen years after the cause of actions accrues, and not after." While *Pierce* construed this provision, more recent teachings make clear that it has not withstood the test of time.

*Pierce* was decided long before the Supreme Court's more recent decisions construing the term "accrues" as importing a discovery rule into a statute of limitations. *See, e.g., Cavanaugh v. Abbott Laboratories,* 145 Vt. 516, 522 (1985) (construing "accrues" as importing

discovery rule into 12 V.S.A. § 512); *Univ. of Vermont v. W.R. Grace & Co.*, 152 Vt. 287, 290-91 (1989) (construing "accrues" as importing discovery rule into 12 V.S.A. § 511). Perhaps the most instructive of these decisions is *Pike v. Chuck Willoughby's Pub, Inc.*, 2006 VT 54. There, the Court reviewed the history of the discovery rule in Vermont, and noted that the discovery rule "is a rule providing for uniform interpretation of a recurring statutory term—that is, 'accrue' and its variants." *Id.*, ¶ 15. Earlier, while rejecting the notion that "*Cavanaugh* and *W.R. Grace* require reading a discovery rule into every limitations provision within Vermont law," the Court emphasized *Cavanaugh*'s teaching "that the word 'accrue' should be given a uniform meaning wherever it appears." *Leo v. Hillman*, 164 Vt. 94, 98 (1995). The Court went on to list, by way of example, various statutes of limitation that employ the term, "accrues," and so would be governed by *Cavanaugh*. *Id.*, n.2. While 12 V.S.A. § 503 is not included on this list, it plainly is subject to the rule announced in *Cavanaugh* and since reaffirmed in multiple contexts. *See Pike*, 2006 VT 54, ¶ 17 ("the discovery rule is an overarching, common-law rule for interpreting a specific statutory phrase, 'accrue' or its variants, *wherever it appears*" (emphasis added)). Thus, while it has not yet been expressly overruled, *Pierce* is clearly no longer good law.

"Determination of the date of accrual under the discovery rule is a factual issue that generally should be decided by the jury." *Id.*, ¶ 18. Moreover, "[t]he pleading of the statute of limitations is an affirmative defense." *Monti v. Granite Sav. Bank & Trust Co.*, 133 Vt. 204, 209 (1975). Thus, "the burden of proof . . . [falls] on the defendant[] to establish such defense." *Id.* In other words, a claimant need not plead survival; unless the complaint (or here, the third-party complaint) pleads facts on which a claim can be shown to be time-barred as a matter of law, a motion to dismiss based on the statute of limitations will not succeed. Here, there being no allegations in the third-party complaint on which the court could determine, as a matter of law, that Luke (or Nichols) should reasonably have discovered her cause of action more than fifteen years before she filed her complaint, Rainville has not met his burden of establishing that the statute of limitations has run.

B. Covenant of Warranty

After arguing that the covenant of seisin claim was brought too late, Rainville takes the opposite tack on the covenant of warranty claim, arguing that it was brought too soon. This

requires analysis first of Nichols's third-party claim and then of Luke's underlying claim against Nichols. Properly analyzed, this argument, too, fails.

First, Nichols's covenant of warranty claim is clearly ripe. A "third-party plaintiff's claim against the third-party defendant arises or accrues when the plaintiff files the complaint in the original action because, under Rule 14, the third-party complaint may then be filed." *Riblet Tramway Co. v. Marathon Elecs. Avtek Drive Div.*, 159 Vt. 503, 506 (1993). Thus, when Luke filed the claim against her, Nichols could properly file a third-party complaint.

This, then, leaves Rainville with the argument that Luke's claim against Nichols is not yet ripe. As third-party defendant, Rainville "may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." V.R.C.P. 14(a). His argument against Luke's claim, however—that a plaintiff must have pleaded eviction or ouster from possession to state a valid claim for breach of the covenant of warranty—overstates the law. Constructive eviction is sufficient to assert a claim for breach of the covenant of warranty. *See Hull v. Fed. Land Bank of Springfield*, 134 Vt. 201, 203–04 (1976) ("statute of limitations on an action for breach of the covenant of warranty starts to run from the time the covenantee is evicted or ousted, either actually or constructively, from the premises conveyed").

It is well-established that where paramount title is in the State or Federal government, "this fact of itself constitutes such a constructive eviction as amounts to a breach of the covenants of warranty and of quiet enjoyment." 172 A.L.R. 18 (1948), Part V(a). In other words, "if the title to land attempted to be conveyed is in the public, there exists such a hostile possession as amounts to a constructive eviction, the instant the deed is made." *Id.*; s*ee also E. Canyon Land & Stock Co. v. Davis & Weber Ctys. Canal Co.*, 238 P. 280, 282 (Utah 1925) ("The authorities, therefore, leave no room for controversy that, where the paramount title is in the sovereign, the purchaser may safely yield to that title, and that so yielding constitutes a constructive eviction which is sufficient to support an action on the covenant of warranty."). Indeed, even where the claim of paramount title lies with a private party, an action on the covenant of warranty will lie. *See Whited v. Issenberg*, 584 S.E.2d 59, 60 (Ga. Ct. App. 2003) (breach of covenant of warranty can be shown by "the existence of an outstanding paramount title" and by proof that the landowner "has been compelled to yield to such title, or *that he is in a situation requiring him to do so presently, as a matter of legal duty*." (emphasis added)). Thus,

the State's "hostile assertion of paramount title" is sufficient to create a live controversy, and thus trigger Nichols's (and in turn, Rainville's) obligation to defend the warranty she gave.

The covenant of warranty imparts not simply an obligation to indemnify against successful claims of paramount title; it is "an assurance by the covenantor . . . that he will defend and protect the covenantee against the lawful claims of all persons thereafter asserted." *Hull*, 134 Vt. at 203. Having been put on notice of the State's lawful claim, and potential exposure not only for actual physical interruption of access to her property but also damages for continuing use in violation of the State's rights, Luke need not have awaited an actual determination of liability before invoking her right to a defense of her title; nor must she await physical ouster from her claimed easement before seeking a declaration that Nichols (and, in turn, Rainville) is obligated to answer for any loss she sustains as a result. *See* 12 V.S.A. § 4711; *Doria v. University of Vermont*, 156 Vt. 114, 117 (1991) (declaratory relief available "when a party is suffering from the threat of actual injury to a protected legal interest" (internal quotations omitted)). Obviously, the same applies for Nichols.

## Order

The State's motion to dismiss is **GRANTED**. Because on the circumstances as argued by the parties the court cannot conclude that any amendment would be futile, dismissal is without prejudice to Luke's right, within 30 days of this order, to file an amended complaint; otherwise, dismissal will be with prejudice. Rainville's motion to dismiss is **DENIED**.

Electronically signed on July 12, 2017 at 12:01 PM pursuant to V.R.E.F. 7(d).


_____
Samuel Hoar, Jr.
Superior Court Judge