2005 VT 63

## In re William and Ann Lyon

[882 A.2d 1143]

No. 04-231

Present: **Reiber, C.J., Dooley,\* Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed June 24, 2005

Motion for Reargument Denied July 26, 2005

---

\* Justice Dooley sat for oral argument but did not participate in this decision.

John W. Lyon of *Otterman and Allen, P.C.*, Barre, for Appellants.

*David John Mullett* of *David John Mullett, P.C.*, Montpelier, for Appellee.

*William H. Sorrell*, Attorney General, *S. Mark Sciarrotta*, Assistant Attorney General, and *Abigail Doolittle*, Law Clerk (On the Brief), Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Skoglund, J.** Appellants William and Ann Lyon appeal the revocation of wastewater permit issued by the Agency of Natural Resources. The Lyons owned three separate adjacent parcels of land in Northfield, Vermont: a parcel with a single family house; a small lot that was a pre-existing lot as defined by the Wastewater System and Potable Water Supply Rules and therefore exempt from permitting (the pre-existing lot); and another small lot arguably eligible for the same pre-existing lot status, though the deed did not contain the pre-existing deferral language (the deferral lot). To provide a seasonal home for Mr. Lyon's mother, the Lyons moved a camper/trailer onto the property line straddling the pre-existing lot and the deferral lot and obtained a wastewater permit from the Agency of Natural Resources (ANR) to connect the camper/trailer to an existing municipal sewage line. A neighbor complained and petitioned ANR to revoke the permit. Following a hearing, the Commissioner of ANR declared the permit invalid because the Lyons' application did not include the design and installation certifications necessary to receive a valid permit. The Lyons appealed the Commissioner's decision to the Water Resources Board.

¶ 2. The Water Resources Board revoked the wastewater permit issued to the Lyons by ANR, holding that the Lyons' application did not include the statutorily required certifications. Given the extraordinary circumstances of this case, including an acknowledged, systemic failure on the part of multiple ANR regional offices to require the certifications when issuing wastewater permits, we hold that the Board erred in rejecting the Lyons' estoppel argument and that the State is estopped from revoking the Lyons' wastewater permit. Accordingly, we reverse the Board's decision revoking the permit and remand to ANR to reinstate the permit.

*Statutory and Regulatory Background*

¶ 3. First, we summarize the regulatory backdrop against which this case unfolds. The Vermont Legislature established the Potable Water Supply and Wastewater System Permit program for the purpose of "regulat[ing] the construction, replacement, modification, and operation of potable water supplies and wastewater systems in the state in order to protect human health and the environment, including potable water supplies, surface water and groundwater." 10 V.S.A. § 1971(1).

ANR may not grant wastewater permits unless the applicant provides a system design certification, *id.* § 1973(d), and, upon completion of the system, the permit remains valid only if the permittee submits an installation certification, *id.* § 1973(e). There is no provision for waiver of the certifications in the statute.

¶ 4. The permit program delegates authority to ANR to establish regulations on wastewater system requirements and the issuance of permits. Pursuant to that authority, in August 2002, ANR promulgated the Wastewater System and Potable Water Supply Rules, 7 Code of Vermont Rules 12 033 001 (2002) (amended 2005), available at http://www.anr.state.vt.us/dec/ww/Rules/OS/Final081602/Subchap1-4-081602.pdf [hereinafter Wastewater Rules]. These rules condition issuance of a permit on the submission of a proper design certification, *id.* § 1-302(b)(1), and mandate that the permit shall require submission of an installation certification once the project is complete, *id.* § 1-303(c). The Wastewater Rules contain no waiver provision for design or installation certifications.

¶ 5. On the other hand, the rules provide that "[f]or projects that present a negligible potential for adverse environmental impact, the Secretary may waive submission of any of the specific information required in subsections (c)(1) through (7) of this section as he or she deems appropriate." *Id.* § 1-302(c)(8). Subsections 1-302(c)(1)-(7) set forth specific application materials, including a plot plan, design flow, soil data, site plans, and other construction details, but make no mention of design or installation certifications. In other words, neither the waiver language of § 1-302(c)(8), nor the language of § 1-302(c)(1)-(7) to which it refers, covers design and installation certifications or allows ANR to waive them. Indeed, the Secretary cannot issue a permit "unless the Secretary receives the designer certification required to be submitted with the permit application under section 1-302(b)(1) of these Rules." *Id.* § 1-302(e).

¶ 6. Once an applicant has submitted a complete permit application, the Secretary has authority to deny the permit or grant it with specific conditions. *Id.* § 1-302(e). After a permit is granted, ANR may revoke it "either in response to a petition or on [its] own motion." *Id.* § 1-306(a). An applicant or any person directly affected by a permitted project may petition ANR for review and reconsideration. *Id.* § 1-304(a). The bases for revocation include a violation of a permit condition as well as a "violation or failure to comply with the provisions of these Rules or authorizing statutes." *Id.* § 1-306(b)(4). Additionally, a "person aggrieved by a final act or decision, other than an enforcement decision,

of the Secretary under these Rules may appeal to the Vermont Water Resources Board in accordance with 10 V.S.A. section 1977." *Id.* § 1-305(a).

*Factual and Procedural Background*

¶ 7. In November 2002, the Lyons received a letter from the Barre Regional Office of ANR discussing a possible subdivision violation arising from the location of the camper/trailer. The Regional Engineer, Donald Wernecke, offered three options the Lyons could take to avoid a violation: (1) merge the two lots on which the camper/trailer was located; (2) obtain a Wastewater System and Potable Water Supply Permit for the camper/trailer; or (3) relocate the camper/trailer.

¶ 8. The Lyons chose to pursue two of the three options. First, in December 2002, the Lyons applied for a wastewater permit for the project. Though the application lacked both a design certification and an installation certification, ANR issued the permit on February 6, 2003. Second, two days after receiving the permit, the Lyons executed a quitclaim deed merging the two lots.

¶ 9. After the wastewater system had been installed, an adjoining property owner, Robert Tucker, filed a petition with ANR to revoke the permit. On August 12, 2003, in response to Tucker's petition, the Commissioner declared the Lyons' wastewater permit invalid because it was issued without design and installation certifications, in violation of §§ 1-302(b) and 1-303(c) of the Wastewater Rules. Also on August 12, 2003, the Commissioner issued a "Procedure for issuance of voluntary estoppel Letters for projects with permits, that are substantially completed, but which do not have valid installation certifications," acknowledging that permits were issued between June 14, 2002 and August 18, 2003 without submission of a plan prepared by a designer and that, lacking a plan, no installation certification was included in the applications. Jeffrey Wennberg, Commissioner, Department of Environmental Conservation, Estoppel Statement (Aug. 12, 2003) [hereinafter Estoppel Statement]. Therefore, the Commissioner stated, ANR would not institute enforcement actions for wastewater permits that lacked design and installation certifications because permit recipients had "reasonably relied on the expectation that the permit was issued in compliance with the [Wastewater Rules]." *Id.*

¶ 10. The Lyons appealed to the Board for de novo review of the Commissioner's decision invalidating their permit pursuant to 10 V.S.A. § 1977. Both Tucker and the Lyons moved for summary disposition, and ANR moved to dismiss.

¶ 11. On April 21, 2004, the Board granted summary judgment to Tucker, and revoked the Lyons' permit. It ruled that "ANR had no authority to waive the certification requirements" of 10 V.S.A. § 1973(d), (e) and §§ 1-302(b)(1) and 1-303(c) of the Wastewater Rules. Further, the Board ruled that "[b]oth the statute and ANR's rules expressly prohibit ANR from issuing a permit in the first place unless the permit application includes a design certification." The Board also rejected the Lyons' estoppel argument, finding it unsupported by the facts.

¶ 12. The Lyons then appealed under 10 V.S.A. § 1977(b), which allows an aggrieved party to appeal adverse decisions by the Water Resources Board to the Supreme Court. The Lyons argue that: (1) the design certification is waivable and the Board's interpretation of the governing statute creates a rule conflict; (2) the revocation is a retroactive application of law that violates vested rights of the Lyons; and (3) the State is estopped from revoking the permit. Appellee Tucker and the State of Vermont, as amicus curiae, request that the Court affirm the Board's decision.

## I.

¶ 13. As a preliminary matter, we reject the Lyons' first two arguments. First, as explained above, the authorizing statute and the applicable Wastewater Rules explicitly require both design and installation certifications. There is no authority allowing ANR to waive these requirements. As noted above, § 1-302(c)(8) of the Wastewater Rules authorizes ANR to waive only certain enumerated application materials, not including the certifications. Thus, there is no rule conflict, and the Lyons' first argument is without merit.

¶ 14. Second, the revocation of the Lyons' permit was not a retroactive application of law violating a vested right of the Lyons. The permit was revoked pursuant to valid regulations already in effect at the time they applied for their permit. Accordingly, the Lyons' second argument is also without merit. Thus, the single issue remaining on appeal is whether the Lyons have met their burden to estop the State. For the reasons set out below, we hold that the State is estopped from revoking the Lyons' permit, and we reverse the Board's decision revoking the permit.

## II.

¶ 15. We review the Board's denial of the Lyons' estoppel argument to determine "whether the Board acted arbitrarily, unreasonably, or

contrary to law." *In re Town of Sherburne*, 154 Vt. 596, 604, 581 A.2d 274, 279 (1990). In doing so, "we must decide whether the decision makes sense to a reasonable person," *id.* at 605, 581 A.2d at 279, while recognizing that "the board has wide discretion in making its findings and conclusions as long as they are not inconsistent with legislative and agency policy." *Town of Groton v. Agency of Natural Res.*, 172 Vt. 578, 579, 772 A.2d 1103, 1105 (2001) (mem.). However, an administrative board's conclusions of law are not so protected, and it is for this Court to determine whether, as a matter of law, its findings of fact fairly and reasonably support the conclusions of law. *In re McGrath*, 138 Vt. 77, 82, 411 A.2d 1362, 1365 (1980). Because the applicability of judicially-created doctrines, such as equitable estoppel, is a question of law outside of the Board's special expertise, see *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 19-20, 769 A.2d 668, 673 (2001) (stating that applicability of collateral estoppel was question of law outside special expertise of Public Service Board), we review de novo the Board's decision on equitable estoppel, see *Thompson v. Dewey's South Royalton, Inc.*, 169 Vt. 274, 276, 733 A.2d 65, 67 (1999) (noting that appellate review of questions of law is nondeferential and plenary).

■ ¶ 16. "The doctrine of equitable estoppel precludes a party from asserting rights which otherwise may have existed as against another party who has in good faith changed his position in reliance upon earlier representations." *My Sister's Place v. City of Burlington*, 139 Vt. 602, 609, 433 A.2d 275, 279 (1981). As we noted in *My Sister's Place*, "[t]he doctrine of estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." *Id.* (quotations omitted). We have further recognized that although "[e]stoppel is not a defense that should be readily available against the state, . . . neither is it a defense that should never be available." *In re McDonald's Corp.*, 146 Vt. 380, 383, 505 A.2d 1202, 1203 (1985) (quotations omitted). Thus, "[w]hile the doctrine of estoppel must be applied with great caution when the government is the involved party, nevertheless when a government agent acts within his authority, the government can be estopped by his actions." *My Sister's Place*, 139 Vt. at 609, 433 A.2d at 279 (citations omitted).

■ ¶ 17. The party seeking equitable estoppel against the government must establish all four of its traditional elements: (1) the party to be estopped must know the facts; (2) the party being estopped must

intend that his conduct shall be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting the estoppel must rely on the conduct of the party to be estopped to his detriment. *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 524, 739 A.2d 1241, 1244-45 (1999). Additionally, the party seeking to estop the government must demonstrate that "the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case." *In re Letourneau*, 168 Vt. 539, 547, 726 A.2d 31, 37 (1998) (quotations omitted).

¶ 18. The Board found that the Lyons failed to meet the first and fourth elements of estoppel and did not prove the requisite extraordinary circumstances that would justify estopping the State. Specifically, the Board found that: (1) "ANR's Regional Engineer plainly did not know the facts"; (2) "[a] permit applicant cannot reasonably rely on an agency employee's interpretation of the law, which is often disputed by third parties"; and (3) "this is not one of those rare cases" that would justify estoppel against a government body.

## A.

¶ 19. We hold that the Lyons proved the required elements of estoppel and met their burden for estopping the government. Regarding the first element, we conclude that, as a matter of law, the Regional Engineer knew the relevant facts. The Regional Engineer was acting within the scope of his authority when he offered guidance to the Lyons and when he granted their permit. The Lyons consulted with the Regional Engineer on steps they should take to gain the permit, and communicated their intentions clearly. Thus, the Regional Engineer was fully aware of the facts regarding the Lyons' application. Moreover, because he is a duly authorized agent of the government whose responsibilities include properly advising the public regarding the issuance of wastewater permits, he was reasonably charged with knowing the laws governing his duties. Thus, the Lyons satisfied the first element of equitable estoppel.

¶ 20. The Lyons also satisfied the second element because the Regional Engineer intended that the Lyons would rely upon his conduct. He informed the Lyons of specific steps they should take to receive a permit. Furthermore, the permit application process is designed to award permits to satisfactorily submitted applications. The Regional Engineer is central to this process as both advisor and the person with authority to issue the permits on behalf of the agency. As

such, in performing his duties, the Regional Engineer fully intended for the Lyons to act on his advice in order to receive a permit, which they did.

¶ 21. As for the third element, the Lyons were ignorant of the true facts. Indeed, they had no reasonable way of knowing that several of the regional offices of the Wastewater Management Division of the Department of Environmental Conservation were violating the law by issuing permits without the required certifications. See Estoppel Statement at 1 (acknowledging issuance of permits by "some" regional offices without design or installation certifications). While as a general rule the Lyons' ignorance of the law would not excuse failure to comply with its requirements, this is an exceptional circumstance. We will not require permit applicants to know the law better than the government agency charged with administering it, particularly where, as here, the agency acknowledges that permit recipients like the Lyons "reasonably relied on the expectation that the permit was issued in compliance with the [law]." *Id.* Further, multiple ANR regional offices incorrectly applied the law for over one year, according to the agency's own Commissioner. In such an extraordinary circumstance, it would be manifestly unfair to charge permit applicants with the responsibility of correctly interpreting and enforcing the applicable legal provisions in the face of advice to the contrary from the responsible government agency.

¶ 22. Finally, the Lyons have relied on the government to their detriment. The Lyons relied on the specific guidance offered by the Regional Engineer, subsequently received a permit without having followed the steps required by law, and installed the permitted wastewater system. As a result, the Lyons have suffered the costs of defending their permit before the Board, and they presumably will have to repeat the permitting process at greater time and expense if the Board's revocation is upheld. Furthermore, the Lyons' title to the affected lots will be clouded until a new permit is successfully obtained. Moreover, these costs borne by the Lyons need not be balanced with any actual injury to any party; neither Tucker nor the State alleges any adverse impact resulting from the wastewater system as installed. Therefore, the Lyons alone have suffered detrimental consequences due to their reliance on the responsible agency, satisfying the fourth element of estoppel.

## B.

¶ 23. Having met the traditional requirements of estoppel, the Lyons also have carried the additional burden of showing that "the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government . . . ." *In re Letourneau*, 168 Vt. at 547, 726 A.2d at 37 (quotations omitted). In prior cases, we have declined to estop the government where an isolated agency employee's actions resulted in some form of reliance by a single party. Here, by contrast, an unknown number of permit applicants, including the Lyons, received permits without supplying the required design and installation certifications. Additionally, multiple ANR regional offices issued wastewater permits without requiring applicants to submit the certifications. Furthermore, remarkably — and admirably — the agency admitted its own error: on the same day ANR invalidated the Lyons' permit, the Commissioner issued the Estoppel Statement, recognizing that

> some of the regional offices . . . issued . . . [p]ermits for projects with existing wastewater systems . . . without requiring submission of a plan prepared by a designer. Because there was no plan, the requirement for a design certification was waived, and therefore, the requirement for an installation certification was not included as a permit condition.

Estoppel Statement at 1. The Commissioner went on to acknowledge that "[i]n these situations, the recipient of the permit has reasonably relied on the expectation that the permit was issued in compliance with the Rules" and to declare that the Commissioner would "voluntarily estop [himself] from asserting the existence of a permit violation in these cases." *Id.* If we decline to estop the government under these circumstances, it would be difficult to assert that equitable estoppel against the government remains a viable doctrine in Vermont.

¶ 24. The exceptional circumstances present here are analogous to, if not more striking than, those in *My Sister's Place v. City of Burlington.* In that case, agents of a nonprofit corporation sought to open a women's center and restaurant in the City of Burlington. The agents met with a city deputy fire warden to discuss renovations necessary to bring the premises into compliance with the city's fire code. They informed the fire warden of the nonprofit's plans for the restaurant, and he gave them a list of specific improvements necessary to comply with the code. However, upon a second inspection, after the nonprofit

had completed the renovations, the fire warden informed the agents that they could not open the restaurant because they were not in compliance with the code, and attributed his erroneous guidance to his unfamiliarity with certain provisions of the fire code.

¶ 25. Noting that the fire warden was "a duly authorized agent of the City charged with the duty of enforcing the [code]," we concluded that "[c]oncomitant with this duty is the charge of knowing the law and properly advising the public." 139 Vt. at 608, 433 A.2d at 279. Thus, we estopped the city from denying liability for the nonprofit's losses. *Id.* at 609-10, 433 A.2d at 280.

¶ 26. Similarly, the Lyons were misinformed by — and reasonably relied upon — a duly authorized agent of the government acting within his authority. And, as ANR recognized, the agency provided similar advice to permit applicants at multiple regional offices over an extended time period. Therefore, the Lyons' reliance on the Regional Engineer in this case is precisely the kind of rare circumstance that justifies estopping the State, because the injustice of allowing the revocation of their permit easily outweighs any effect on the public interest.

¶ 27. This result in no way undermines Vermont's wastewater permitting system, which the Court recognizes was designed "to protect human health and the environment." 10 V.S.A. § 1971(1). As conceded at oral argument, no party has shown any injury to property or the environment. Furthermore, were such an injury to a public or private interest discovered, the injured party would be able to seek a remedy just as if the existing wastewater system in question had received a valid permit and subsequently malfunctioned. Wastewater Rules § 1-304. Additionally, the Wastewater Rules would continue to govern any changes made to the system in the future that would require a new permit. *Id.* § 1-402(a). Thus, the Wastewater Rules violations here are merely technical, and any future adverse effects can be adequately addressed.

¶ 28. This case is distinguishable from those cited by appellee Tucker and the State, in which we declined to estop the government. For example, in *In re Letourneau*, we did not estop the Town of Derby from enforcing setback requirements against a homeowner who had not fully informed the zoning administrator of his renovation plan, and thus had not met the first element of estoppel. 168 Vt. at 548, 726 A.2d at 38; see also *In re Barlow*, 160 Vt. 513, 523-24, 631 A.2d 853, 859-60 (1993) (declining to estop Environmental Board decision requiring Act 250 permit where party's evidence of gravel mine's historical use was

insufficient to fully inform the Board of the true facts, and thus failed to meet the first element of estoppel). In contrast, the Lyons made the permitting authority fully aware of their plans and received direct guidance from the Regional Engineer as to how they should proceed. The information they provided and the steps they took to follow the Regional Engineer's guidance must have been viewed satisfactorily because the Lyons received a permit from ANR.

¶ 29. Likewise, in *Wesco, Inc. v. City of Montpelier*, this Court declined to estop the city from requiring a developer to obtain a conditional use permit while renovating its property. Because the city zoning administrator had not made any decision on the merits of the developer's application, but rather had referred it to the city's planning commission for further review, we held that "[a]ny reliance by Wesco on the zoning administrator's conduct was misplaced and premature." 169 Vt. at 524, 739 A.2d at 1245. In contrast, here the Regional Engineer, as the Commissioner's duly authorized agent, was responsible for final approval of the Lyons' permit application, and their reliance on both his guidance and the presumptive validity of the approved permit was reasonable. Indeed, the Commissioner said as much in the Estoppel Statement.

¶ 30. Finally, in *In re McDonald's Corp.* we declined to estop the Environmental Board from requiring a restaurant to obtain an Act 250 permit where an Environmental Coordinator involved with the restaurant's application opined that the project would not require a permit. We held that the Environmental Coordinator's opinion was only advisory in nature, and that the information he gave McDonald's was beyond the scope of his authority. 146 Vt. at 384-85, 505 A.2d at 1204-05. The facts of *McDonald's* contrast with the present case, where the Regional Engineer who advised the Lyons was acting within the scope of his authority both when he gave specific guidance to the Lyons, and when he subsequently granted their permit. Moreover, by granting their permit, his conduct went well beyond offering an advisory opinion.

¶ 31. We have repeatedly noted that the "doctrine of equitable estoppel is 'based upon the grounds of public policy, fair dealing, good faith, and justice.'" *Wesco, Inc. v. City of Montpelier*, 169 Vt. at 523, 739 A.2d at 1244 (quoting *Fisher v. Poole*, 142 Vt. 162, 168, 453 A.2d 408, 411 (1982)). Those ends can be served here only by estopping the State from revoking the Lyons' permit, given that the Lyons reasonably relied on the Regional Engineer's advice and conduct associated with the issuance of the permit, and that the Commissioner recognized

as much in the Estoppel Statement. Accordingly, we reverse the Board's decision rejecting the Lyons' estoppel argument and remand this matter to ANR to reinstate the permit.

*Reversed and remanded to ANR. ANR shall reinstate Wastewater System and Potable Water Supply Permit # WW-5-2079.*