# STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

| Langlois/Novicki Variance Denial | Docket No. 48-5-15 Vtec |
|---|---|
| Langlois/Novicki NOV | Docket No. 148-12-15 Vtec |
| Town of Swanton v. Gary Langlois | Docket No. 8-1-16 Vtec |

## Decision on the Merits

Before the Court are three related matters concerning a pergola Mr. Gary Langlois[1] constructed on his property in Swanton, Vermont without a zoning permit after the Zoning Administrator ("ZA") for the Town of Swanton ("Town") told him that no permit was necessary. Despite the ZA's assurances, soon after construction of the pergola was complete, Mr. Langlois was informed that he was in violation of the Town of Swanton Land Use and Development Regulations ("Regulations") because a zoning permit was necessary and the pergola did not meet setbacks. Mr. Langlois then applied for a building permit and variance, but both applications were denied by the ZA and, on appeal, by the Town of Swanton Development Review Board ("DRB").

Mr. Langlois appealed the denial of his request for a variance and the affirmation of his building permit denial to this Court on May 4, 2015, and the matter was assigned Docket No. 48-5-15 Vtec ("the Variance and Zoning Permit Appeal"). Subsequently, the Town served Mr. Langlois with a notice of alleged violation ("the NOV") on June 25, 2015 for the unpermitted construction. The NOV stated that Mr. Langlois must remove the pergola by July 23, 2015. Mr. Langlois timely appealed the NOV to the DRB. The DRB affirmed, and Mr. Langlois appealed to this Court in Docket No. 148-12-15 Vtec ("the NOV Appeal"). Mr. Langlois did not, however, remove the pergola, and on January 25, 2016 the Town filed a complaint (Docket No. 8-1-16 Vtec) requesting injunctive relief—the removal of the pergola—and monetary penalties ("the

---

[1] Some of the filings in this case name Mr. Edward Novicki, Mr. Langlois's late partner, as a co-applicant and/or respondent. Though Mr. Novicki was a co-owner of the property in question, he was deceased by the time of the events discussed in these appeals. He is therefore not a party in this matter.

1

Enforcement Action"). The three matters were coordinated for preparation and trial, pursuant to V.R.E.C.P. 2.

A merits hearing was held on the three coordinated matters on July 11 and 12, 2016 in the Costello Courthouse in Burlington, Vermont. A site visit to Mr. Langlois's property at 40 Maquam Shore Road in Swanton, Vermont was conducted on the morning of July 12, 2016; the Court also visited the adjoining neighbors' property. At trial, Mr. Langlois was represented by Katelyn Ellerman, Esq., and the Town of Swanton was represented by Edward Adrian, Esq. Interested persons (the adjoining neighbors) Michael Heller and Shawn Robtoy were self-represented.

Based upon the credible evidence received at trial, which was put into context by the site visit, the Court renders the following findings of fact and conclusions of law.

## Findings of Fact

1. Gary Langlois owns property at 40 Maquam Shore Road in Swanton, Vermont ("the Property").

2. The Property was purchased by Mr. Langlois's late partner, Edward Novicki, in 2005.

3. The Property is in the Town of Swanton Shoreland Recreation Zoning District.

4. When the Property was purchased, it was already improved with a single-family home, a concrete seawall, and a lakeside concrete patio with a black metal railing around the perimeter.

5. In 2005, Mr. Langlois and Mr. Novicki also purchased a lake camp to the south of the Property along Maquam Shore Road.

6. Around the summer 2009, Mr. Langlois rented the camp to retired state trial Judge Ronald Kilburn. Judge Kilburn rented the camp for several summers; the last summer Judge Kilburn rented the camp was the summer of 2012.

7. Sometime in the spring or summer of 2014, Mr. Langlois discussed with a contractor the possibility of adding a pergola to the concrete patio on the Property.

8. A pergola is not defined in the Regulations, a copy of which was submitted as Town Ex. 21.

9. In late June of 2014, Judge Kilburn was at the Property on a social visit. At that time, Judge Kilburn was the Zoning Administrator for the Town of Swanton.

2

10.     Mr. Langlois brought ZA Kilburn to the concrete patio and described how he would like to build a pergola.  They discussed how the concrete patio had likely been in place for around twenty years.

11.     Mr. Langlois explained that the pergola he was proposing would not extend beyond the existing concrete patio footprint.

12.     During that conversation, Mr. Langlois inquired about necessary permits, and ZA Kilburn indicated that his interpretation of the Regulations was that a permit would not be necessary to construct the described pergola.

13.     Soon thereafter, Mr. Langlois asked a contractor, Mr. Hanley, to prepare a sketch and quote for the construction of a pergola on the concrete patio.

14.     After receiving the sketch and quote, Mr. Langlois went to the Town Zoning Office. He showed ZA Kilburn the sketch and told him that he planned to place the pergola on the existing concrete patio.  Mr. Langlois again asked whether a zoning permit was necessary, and, after reviewing Mr. Langlois's plans and the Regulations, ZA Kilburn responded that no permit was necessary.

15.     Mr. Langlois put down a non-refundable deposit with his contractor for the pergola materials on August 21, 2014.

16.     Around this time, Mr. Langlois spoke with his neighbor, Mr. Heller, telling him that he planned on building a pergola on the concrete patio.  Mr. Heller said he did not mind, but asked that Mr. Langlois not include screens in the pergola.  Mr. Langlois also told Mr. Heller that the ZA had concluded that no permit was necessary to build the pergola.

17.     On or about August 25, Mr. Langlois received an email from Rona Davis, Mr. Heller's wife, stating that she and Mr. Heller had concerns about the pergola and would prefer that it not be built.

18.     Ms. Davis and Mr. Heller ("the Davis/Hellers") did not file any complaints with the Town at this time.

19.     In late September, Mr. Heller asked ZA Kilburn whether he could build a similar pergola on his property.  ZA Kilburn told Mr. Heller that he did not need a permit for a pergola similar in size to the pergola on Mr. Langlois's property.

20. Construction of Mr. Langlois's pergola was completed around the end of September, 2014.

21. The finished pergola is about 18 by 20 feet and does not extend beyond edge of the existing concrete patio.

22. Mr. Langlois spent roughly $33,000 on the pergola.

23. The edge of the pergola is about a foot from the Davis/Heller property line, but no closer than the edge of the existing concrete patio.

24. Sometime around December 15, 2014, the Town of Swanton Selectboard learned that ZA Kilburn had informed Mr. Langlois that he did not need a zoning permit for the pergola.

25. On January 16, 2015, Mr. Langlois received a letter from ZA Kilburn informing him that the Selectboard had directed ZA Kilburn to take corrective action with regards to the pergola on Mr. Langlois's property. The letter directed Mr. Langlois to request an after-the-fact zoning permit and to submit a sketch of the pergola, its dimensions, and distances from lot boundaries and Lake Champlain.

26. ZA Kilburn stated in the January 16, 2015 letter, "I am well aware that I had previously informed you that no permit would be necessary and that you, in reliance thereon, constructed the structure (pergola) in question." Town Ex. 7.

27. Subsequently, Mr. Langlois went to ZA Kilburn's office and filled out a zoning permit application. ZA Kilburn denied the application while Mr. Langlois was still present and directed Mr. Langlois to seek a variance.

28. Mr. Langlois then applied for a variance and appealed the zoning permit denial to the DRB, paying all necessary fees.

29. On April 9, 2015, the DRB held a hearing on the after-the-fact zoning permit application and variance request.

30. After the hearing, on April 21, 2105, the DRB denied the zoning permit appeal and variance request, finding the pergola did not meet required setbacks or the criteria for a variance in Section 9.4 of the Regulations.

31. Mr. Langlois appealed the DRB's decision to this Court on May 4, 2015. The matter was assigned Docket No. 48-5-15 Vtec.

32.    On June 11, 2015, ZA Kilburn sent Mr. Langlois an NOV, describing the alleged violation as, "The Construction of a building (pergola) on an existing patio which does not meet the setbacks required in the Shoreland Recreation District, without obtaining a building permit, contrary to Section 9.1 (B) of the regulations and 24 V.S.A. Section 4449." Town Ex. 12. The notice directed that Mr. Langlois had seven days to cure the violation by removing the pergola, and for each day past the seventh day that the pergola remained, a fine would be levied by the Town.

33.    The Town Selectboard removed ZA Kilburn from the prosecution of Mr. Langlois's alleged zoning violations around June 24, 2015 due to ZA Kilburn's personal relationship with Mr. Langlois and to avoid an appearance of a conflict of interest.

34.    David Jescavage became acting ZA after ZA Kilburn was removed from the matter.

35.    On June 25, 2015, ZA Jescavage issued a revised notice of alleged violation to Mr. Langlois, superseding the prior notice and again alleging that the pergola was built in violation of setbacks and without a building permit. The NOV directed Mr. Langlois to remove the pergola by July 23, 2015, or else penalties would accrue.

36.    Mr. Langlois appealed the NOV to the DRB, and the DRB held a hearing on the appeal on November 19, 2015.

37.    On December 15, 2015, the DRB issued a written decision denying Mr. Langlois's appeal and upholding the NOV. In its decision, the DRB gave three reasons for its denial: first, that Judge Kilburn had acted beyond the scope of his duties when he informed Mr. Langlois that no permit was necessary; second, that by applying for an after-the-fact permit, Mr. Langlois recognized that a permit was required; and third, that Mr. Langlois had familiarity with the zoning regulations because he had previously come before the DRB to express concerns about a neighbor's proposed house site, and thus knew that a permit was required for his pergola.

38.    Mr. Langlois appealed the DRB's decision upholding the NOV to this Court on December 18, 2015. The matter was assigned Docket No. 148-12-15 Vtec.

39.    On January 25, 2016, the Town filed an enforcement action against Mr. Langlois seeking injunctive relief and penalties for the violations alleged in the NOV. The matter was assigned Docket No. 8-1-16 Vtec.

5

40.     The Regulations require all accessory structures greater than 100 square feet to maintain, at a minimum, a 15-foot setback from property boundaries and a 50-foot setback from Lake Champlain.

41.     The pergola is about 360 square feet, is less than 15 feet from the Davis/Hellers' property line, and is within 50 feet of Lake Champlain.

42.     To date, Mr. Langlois has not removed the pergola.

**Conclusions of Law**

Through his various Statements of Questions in the Variance Appeal and NOV Appeal and in the arguments raised in his pre-trial memorandum, Mr. Langlois has put forth three issues for our consideration: (1) whether ZA Kilburn's opinion that no zoning permit was required for his pergola was a final, unappealed decision that is binding on the Town and neighbors; (2) whether the Town is estopped from enforcing the Regulations against Mr. Langlois and requiring a variance; and (3) whether it is equitable to require the pergola be removed.[2]  Mr. Langlois does not, however, challenge the merits of the variance denial or the Town's assertion that the Regulations do in fact require a pergola, like Mr. Langlois's, to receive zoning approval.

We turn first to the finality of ZA Kilburn's opinion, as this could resolve all matters before us, and we will then turn to the remaining issues.

I.      Finality of the ZA's Decision

Mr. Langlois asserts that ZA Kilburn's opinion that no permit was necessary was an appealable decision under 24 V.S.A. § 4472, and thus, the Davis/Hellers' and the Town's failure to appeal rendered that decision final and binding.  Because the decision was final and binding, he argues, the Town and the Davis/Hellers are barred from requiring a variance or pursuing the enforcement action.

As discussed more fully below, ZA Kilburn's repeated opinion that no permit was needed could give rise to Mr. Langlois reasonable reliance and thus to a claim of equitable estoppel

---

[2]  Mr. Langlois's three questions in his Statement of Question in the NOV Appeal ask: 1) whether the Town is estopped from requiring a zoning permit or variance for the pergola; 2) whether the Town is estopped from enforcing the Regulations against the pergola; 3) whether it is equitable to allow the Town to collect fines and require the pergola be removed in light of the ZA's determination that no zoning permit was required.  Mr. Langlois's Statement of Questions in the Variance and Zoning Permit Appeal raises substantially the same issues and also asks whether the ZA's determination is a final unappealed decision and thus binding on the Town and neighbors.

6

against the Town. We disagree, however, that ZA Kilburn's verbal opinion, expressed solely to Mr. Langlois, without any formal application or notice to the public or adjoining landowners, constitutes a final decision. See In re Burns Two-Unit Residential Bldg., 2016 VT 63, ¶ 14. To conclude that an unpublished determination is controlling on third parties, and thereby prevents them from challenging the opinion or decision, would, due to the lack of notice and opportunity to raise concerns, run afoul of doctrines of due process. See Id. We decline, therefore, to conclude that the ZA's opinion was a final and binding decision under 24 V.S.A. § 4472(a).

Neither the statute nor our case law clearly establishes when a town official's verbally expressed position will bind third parties for the purposes of 24 V.S.A. § 4472. We have held that where the decision is rendered in response to an application and followed by some writing memorializing the verbal decision that is published according to the statutory and municipal notice provisions, that decision must be appealed if a party wishes to challenge it. Here, however, there was no formal application seeking a decision on the necessity of a zoning permit, and the ZA's opinion was given orally without any formal writing or publication of the decision as is required for decisions on zoning permit applications. See 24 V.S.A. § 4449(b); Regulations § 9.1(C)(6). ZA Kilburn's decision was only communicated to Mr. Langlois.

Mr. Langlois argues that the Town and the Davis/Hellers did eventually receive actual notice that ZA Kilburn had informed Mr. Langlois that no permit was needed, and thus were obligated to appeal that determination. We disagree. While the Town and the Davis/Hellers may have later learned of the ZA's opinion, this after-the-fact notice does not transform the ZA's action into a final decision. Primarily, it is unclear what "decision" there was to appeal. There was no application submitted by Mr. Langlois, and no explanation of the basis for ZA Kilburn's determination. Further, once the Davis/Hellers were made aware of the ZA's opinion, they were not actually provided any explanation for why no permit was needed or on how to challenge the construction of the pergola. Likewise, the Selectboard did not learn that ZA Kilburn had informed Mr. Langlois that no permit was necessary until several months after the pergola was built, and had no application or formal determination to review. Furthermore, there was no opportunity for other potentially interested parties to learn of ZA Kilburn's determination.

We decline, therefore, to conclude that the ZA's opinion was a final decision. See Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 523 (1999) (concluding that zoning administrator had not made final decision because zoning administrator had never granted or denied a zoning permit). For this decision, we need not announce a rule for when an oral opinion of a town officer will constitute an act or decision for the purposes of 24 V.S.A. § 4472. It suffices that, here, because the ZA's determination was only expressly communicated to Mr. Langlois and was not followed by published notice of the request or determination, the unappealed opinion of ZA Kilburn that no zoning permit was necessary does not preclude the Town's or the Davis/Hellers' current challenges to Mr. Langlois's pergola.

II.   Variance and Zoning Permit Appeal

By appealing the variance and zoning permit application denials, Mr. Langlois appears to have sought our de novo review of his request for a variance and for a zoning permit. As the party requesting the variance and zoning permit, Mr. Langlois bears the burden of proving that the proposed use meets the five variance criteria. See Regulations §§ 9.1, 9.4. In his Statement of Questions, pre-trial memorandum, and at the trial itself, however, Mr. Langlois failed to raise any specific issues related to the merits of his variance request; he only challenged whether it was proper for the Town to require a variance (a claim addressed above). Therefore, because Mr. Langlois has failed to offer any evidence or argument on why his variance is warranted, we must **DENY** the variance application that is the subject of this de novo appeal.

III.   Estoppel

Mr. Langlois largely focuses on the claim that ZA Kilburn's representations that no permit was required equitably estops the Town from requiring the pergola to comply with the Regulations and from seeking penalties and injunctive relief against Mr. Langlois. [3]

"The doctrine of equitable estoppel precludes a party from asserting rights which otherwise may have existed as against another party who has in good faith changed his position in reliance upon earlier representations." My Sister's Place v. City of Burlington, 139 Vt. 602, 609

---

[3] This issue was raised by Mr. Langlois in his three-question Statement of Questions in the NOV Appeal, as well as by three of the four questions in his Statement of Questions in the Variance Appeal. The fourth question asks whether ZA Kilburn's determination was final and binding because no party appealed the decision.

(1981).  The party asserting estoppel must prove four elements: (1) the party being estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely to his detriment on the estopped party's representations.  See In re Lyon, 2005 VT 63, ¶ 17, 178 Vt. 232.

Estoppel is rarely invoked against the government, but the Vermont Supreme Court has recognized that the representations of a government agent acting within his or her authority may be grounds to estop the government from contradicting those representations.  See My Sister's Place, 139 Vt. at 609; In re Letorneau, 168 Vt. 539, 548 (1998).  In addition to the four factors listed above, to succeed on an estoppel claim against the government, the injustice that would ensue from a failure to find estoppel must sufficiently outweigh any negative impact upon public policy that would result in estopping the government.  In re Griffin, 2006 VT 75, ¶ 18, 180 Vt. 589; Lakeside Equipment Corp. v. Town of Chester, 2004 VT 84, ¶ 8, 177 Vt. 619 (2004).

For the following reasons, we conclude that Mr. Langlois has proven all four elements of equitable estoppel, and we also find that the injustice from denying estoppel outweighs any negative impact to public policy that will result from estopping the Town.

Turning to the first element, the party seeking estoppel need not prove that the government agent knew every detail about the proposal, but rather that the agent knew all the facts necessary to make an informed and correct decision.  See My Sister's Place, 139 Vt. at 610.  But, where the party seeking estoppel omits or misrepresents facts that are necessary for an accurate determination, the first element of estoppel cannot be satisfied.  See In re Letourneau, 168 Vt. at 548.

Here, Mr. Langlois has established that ZA Kilburn, the Town's agent, knew all the material facts.  ZA Kilburn was familiar with the location—the concrete patio—where Mr. Langlois wanted to place the pergola, and Mr. Langlois provided accurate details of the dimensions and characteristics of the pergola.  Further, as the ZA, Judge Kilburn's duties included knowing the relevant zoning regulations.  By showing ZA Kilburn the location for the pergola and providing a sketch of the dimensions of the pergola, Mr. Langlois had provided all the information ZA Kilburn needed to make an accurate determination of whether a zoning permit was necessary.

The Town argues that because the plans Mr. Langlois showed the ZA were only a rough sketch and did not include setback distances, parcel size, and existing structures, ZA Kilburn could not have known the facts. We disagree. Under the Regulations, all "land development" requires a zoning permit. Regulations tbl. 1 at 1-5. The Regulations define "land development" as, in relevant part, "the division of a parcel into two or more parcels, the construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any building or other structure . . . ." Regulations § 10.2 at 10-11. The Regulations specifically exempt "Normal maintenance and repair of an existing structure that does not result in any change to the footprint or height dimensions of the structure," and "[o]ne detached accessory structure which does not exceed 100 square feet in floor area or 10 feet in height, providing such structure meets front setback requirements, is set back a minimum of 5 feet from all lot lines, and is not used as living space . . . ." Regulations § 9.1(A)(3).

ZA Kilburn saw first-hand where the pergola would be constructed—immediately adjacent to the Lake and the Davis/Heller property—and the dimensions Mr. Langlois provided demonstrated that the pergola would be greater than 100 square feet and would be at least 10 feet in height. While the precise dimensions and setback distances may have been relevant to whether the pergola should receive a zoning permit, more precision would not have helped ZA Kilburn reach a correct decision as to whether a zoning permit was required. Those facts are not necessary for a correct determination of whether a zoning permit is required. The evidence demonstrates that ZA Kilburn knew the facts necessary for an accurate determination of whether a zoning permit was required for the proposed pergola.

Mr. Langlois has also demonstrated that the ZA intended his opinion to be acted upon, satisfying the second element. Mr. Langlois approached the ZA multiple times to ask the ZA's opinion on whether a permit was necessary for a pergola. Their first discussion was at the Property, when Mr. Langlois pointed out the location of his proposed pergola. At that time, the ZA informed Mr. Langlois that he did not need a permit. Mr. Langlois then had a contractor draw up a rough design sketch of the proposed pergola and presented the plans to the ZA at his office. After reviewing the materials provided by Mr. Langlois and referencing the Regulations, the ZA again informed Mr. Langlois that no permit was needed. Mr. Langlois had certainly demonstrated

that he intended to construct a pergola and was asking the ZA, in the formal setting of the ZA's office, whether a permit was necessary. Thus, the ZA gave his opinion knowing that Mr. Langlois would act upon it.

As to the third element, we conclude that Mr. Langlois did not know that a pergola required a zoning permit. There was no evidence that anyone had informed Mr. Langlois that pergolas required permits, and to the layman, whether an unenclosed structure proposed for an already existing concrete slab or patio area required a permit likely would have seemed ambiguous.

The Town suggests that because Mr. Langlois had previously participated before the DRB in a matter where setbacks for a neighbor's house were at issue, he must have known that the Regulations required a permit for a pergola—an accessory structure—or that he must have known that the only way to get a formal opinion from the ZA was to submit a building permit application. We disagree. Mr. Langlois's participation in a matter involving building permits and setbacks for a neighbor's house in no way demonstrates that he had a working knowledge of the setback and building permit requirements for a pergola. Furthermore, as the Vermont Supreme Court held in In re Lyons, permit applicants are not required to "know the law better than the government [agent] charged with administering it." In re Lyon, 2005 VT 63, ¶ 21, 178 Vt. 232.

Therefore, even if Mr. Langlois was aware that certain structures may require permits, he took appropriate steps to determine whether a pergola in particular needed a permit. The ZA is the appropriate Town official to whom one should direct questions concerning the need for zoning permits, see Regulations § 9.1, and the ZA is tasked with knowing the relevant regulations. Any limited knowledge Mr. Langlois had of setbacks and zoning restrictions did not require him to disregard the advice of the ZA or seek an independent second opinion. See id. ("[I]t would be manifestly unfair to charge permit applicants with the responsibility of correctly interpreting and enforcing the applicable legal provisions in the face of advice to the contrary from the responsible government [agent]."). Furthermore, it is immaterial that Mr. Langlois did not submit a formal permit application, for he was expressly told by the Town official in charge of overseeing such permit applications that no application was necessary.

11

The fourth element has also been established. Mr. Langlois relied on the ZA to his detriment. Believing no permit was necessary, he incurred over $30,000 in costs to construct the pergola. Now the Town seeks penalties and an injunction directing that the pergola be removed, which will impose additional costs and render worthless Mr. Langlois's investment. Mr. Langlois has also expended significant time and money defending actions he had been told were legal.

Lastly, recognizing that estoppel against the government is not liberally granted, we conclude that the failure to find estoppel in this case would result in an injustice that outweighs any negative effect upon public policy that will result from estopping the Town. Mr. Langlois was clear in his intentions to ZA Kilburn, and ZA Kilburn gave Mr. Langlois a clear directive that no permit was necessary. Mr. Langlois then reasonably acted in reliance on the ZA's assertion. ZA Kilburn's mistake does not impact the enforceability of the Regulations on other landowners or future acts on Mr. Langlois's property, and does not undermine the Regulations themselves.

We recognize that neighbors, like the Davis/Hellers, may also like to construct a pergola or accessory structure near the water on their property, but, unlike Mr. Langlois, will likely be required to obtain a permit, and thus will be subject to setback requirements or establish that they warrant a variance. In addition, allowing the pergola to remain will have some impact on the Davis/Hellers' view of the lake. Any inequity in this regard, however, does not warrant rejection of Mr. Langlois equitable estoppel claim against the Town. The Davis/Hellers have not changed their position in reliance on the incorrect advice of the ZA, have not expended any capital in pursuit of a pergola, and have largely avoided the expense—both in legal costs and in time—that Mr. Langlois has incurred in these matters. While the pergola may impact the Davis/Hellers' view of the Lake, Mr. Langlois gave the Davis/Hellers notice of his intent to build the pergola, and they delayed in formally objecting until after the pergola was completed. Recognizing that this Court cannot fashion a solution that appeases all parties, we will not punish Mr. Langlois for the ZA's error. Any inequity in allowing the pergola to remain is far outweighed by the injustice that will fall solely on Mr. Langlois if we conclude that the pergola must be removed.

We recognize that informal advice from a town official will rarely, if ever, give rise to an estoppel claim. Yet, here, the repeated requests of Mr. Langlois, made in the formal setting of

the ZA's office, accompanied by specific details and plans that did not misrepresent or omit any material information, rises above the level of mere advice, and constitutes one of the rare situations where estoppel against a municipality is warranted. We therefore conclude that the Town of Swanton is estopped from requiring that the pergola comply with the Regulations, from imposing penalties against Mr. Langlois for the pergola, and from requiring the pergola be removed.

## Conclusion

Because we conclude that the Town is estopped from enforcing the Regulations or penalizing Mr. Langlois for the existence of the pergola, there is no basis for the NOV and related enforcement action. We therefore **DISMISS** the NOV that is the subject of Docket No. 148-12-15 Vtec and the Town's enforcement action in Docket No. 8-1-16 Vtec. The fact that the Town is estopped from enforcing the Regulations, however, does not render the Variance Appeal moot; if we were to determine that a variance should be allowed, the pergola would be a lawful and permitted use. Mr. Langlois has not, however, presented sufficient facts for our review in the variance appeal, and we therefore **AFFIRM** the Town's denial of Mr. Langlois variance application.

Although the Town is estopped from prosecuting its enforcement action and from seeking penalties, this Decision does not grant Mr. Langlois a permit for his pergola or allow Mr. Langlois to conduct any future construction on the concrete pad or any expansion or alteration of his pergola. Like an illegal structure protected by the statute of limitations on zoning enforcement, 24 V.S.A. § 4454(a), Mr. Langlois's pergola is still an illegal structure—it is simply that the Town is estopped from bringing an enforcement action in relation to it.

Electronically signed on September 09, 2016 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division