SKOGLUND, J., dissenting.
 

 ¶ 30. I cannot agree that Langlois's monetary damages outweigh Heller's reliance
 on the proper administration of the Town of Swanton's zoning laws, which were enacted to prevent the harm. If the harm to Heller's property and, by extension, the Town's citizens' faith in their zoning laws does not outweigh or, at the least, equal the cost of removing a pergola, this Court should remove the fifth factor from the test for asserting equitable estoppel against the government, for that factor is all bark and no bite. I dissent.
 

 ¶ 31. To successfully assert equitable estoppel against the government, the party seeking estoppel must prove the four traditional elements of estoppel as well as a fifth factor: that "the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case."
 
 In re Lyon
 
 ,
 
 2005 VT 63
 
 , ¶ 17,
 
 178 Vt. 232
 
 ,
 
 882 A.2d 1143
 
 (quotation omitted). I do not quibble with the majority's analysis of the first four factors; rather, my concern involves the unequal weight given to one individual's potential monetary injury when balanced against another innocent individual's reasonable reliance on proper municipal governance and the damage done to the integrity of the same.
 

 ¶ 32. Here, in its analysis of the fifth factor, the Environmental Division found that the cost of building the pergola was approximately $33,000, in addition to legal costs that Langlois accrued defending the zoning violation. The court noted that Langlois clearly indicated his intentions to the zoning administrator, Kilburn, and that Langlois relied on Kilburn's representations. Further, the court concluded that Kilburn's "mistake does not impact the enforceability of the Regulations on other landowners or future acts on Mr. Langlois's property, and does not undermine the Regulations themselves." Against these considerations, the court weighed the harm to Heller. The court conceded that, even if Heller desired a similar outbuilding, he would be unable to construct it without running afoul of the zoning laws. It further found that allowing Langlois's pergola to remain would impact Heller's view of the lake. But the court concluded that these factors did not outweigh Langlois's financial harm, particularly because Heller did not object when Langlois unofficially notified Heller of his plans to construct the pergola and because Heller did not formally object until the pergola was constructed.
 

 ¶ 33. This reasoning is not persuasive. Whether Heller objected when Langlois informed Heller of his plans should have no bearing on the inquiry. Upon being informally notified of the construction, Heller was entitled to rely on the Town's proper administration of its zoning regulations. That is, Heller likely assumed that Langlois would seek the proper zoning permits and that Swanton would correctly enforce the zoning ordinances. In fact, Heller's failure to object demonstrates the degree to which his harm implicates the enforceability of the Town's regulations and the manner in which his injury completely undermines those regulations. If the zoning regulations had been correctly enforced, Heller would have had no need to object. Now, a pergola permanently alters the view from his house, a constant reminder of the Town's inability to implement the regulations and to properly protect his interests.
 

 ¶ 34. Nor am I persuaded by the majority's analysis, which relies heavily on the monetary loss to Langlois while curtly acknowledging that "Heller is an innocent party in this zoning fiasco and will suffer a more significant impact than other citizens may from these events."
 
 Ante
 
 , ¶29. Beyond this mention of Heller's innocence, the majority gives short shrift to Heller's injury
 and does not consider the true ramifications of the injury, such as the possibility that the pergola could devalue Heller's property or that the pergola will permanently affect Heller's enjoyment of his property.
 

 ¶ 35. More important, the majority does not weigh Heller's own reliance on Swanton's proper administration of the zoning laws. I can find no case in Vermont where one individual's particular harm stemming from reliance on a government agent outweighs the harm to an innocent third party who also relied on the government's proper administration of the laws. In
 
 My Sister's Place v. City of Burlington
 
 , for example, the operator of a women's shelter met with the deputy fire warden to discuss the renovations necessary to comply with the fire code.
 
 139 Vt. 602
 
 , 606,
 
 433 A.2d 275
 
 , 278 (1981). At this meeting, the warden provided a list of improvements necessary for compliance with the operator's plans, including the operator's plan to open a restaurant in part of the space. The required list provided was incorrect. After the operator completed renovations, the warden revealed during a subsequent inspection that, as a result of his unfamiliarity with the fire code, he had incorrectly approved the use of the space as a restaurant.
 
 Id
 
 . at 607,
 
 433 A.2d at 278
 
 . We affirmed the trial court's conclusion that the city was estopped from enforcing the code against the operator.
 
 Id
 
 . at 610,
 
 433 A.2d at 280
 
 .
 

 ¶ 36. Similarly, in
 
 Vermont North Properties v. Village of Derby Center
 
 , we concluded that the defendant-village was estopped from denying that the plaintiff-developer reserved water and sewer rights.
 
 2014 VT 73
 
 , ¶ 24,
 
 197 Vt. 130
 
 ,
 
 102 A.3d 1084
 
 . In analyzing the fifth factor, we concluded that the scope of the plaintiff-developer's water and sewer right reservation, coupled with the formal recognition of the reservation by the entire village board, outweighed any public interest implicated by estopping the government.
 

 Id
 

 .
 
 ¶ 34 ; see also
 
 Lyon
 
 ,
 
 2005 VT 63
 
 , ¶ 31,
 
 178 Vt. 232
 
 ,
 
 882 A.2d 1143
 
 (holding that permit applicant made sufficient showing to estop Agency of Natural Resources from revoking wastewater permit);
 
 Stevens v. Dep't of Soc. Welfare
 
 ,
 
 159 Vt. 408
 
 , 420-21,
 
 620 A.2d 737
 
 , 743-44 (1992) (concluding that government estopped from denying retroactive application of benefits where agent provided patients inaccurate information about healthcare billing).
 

 ¶ 37. The common thread running through these cases is that the equitable estoppel acted as shield, protecting the individual or organization from any harm that resulted from reliance on the government's representation. See
 
 Covington Cty. v. Page
 
 ,
 
 456 So.2d 739
 
 , 741 (Miss. 1984) ("The doctrine of equitable estoppel is to be cautiously applied. It is a shield, not a sword."). I do not believe that equitable estoppel is an appropriate action where, as in this case, the proverbial raising of the shield harms an innocent third party who also relied on the government's assurances. Here-although the wound was surely not intentional-Langlois's invocation of estoppel operated as a sword against Heller and pierced his reliance on the Town's zoning laws. Cf.
 

 id
 

 .
 

 ¶ 38. Moreover, this result undermines our repeated admonitions that equitable estoppel against the government must be applied "with great caution."
 
 Ante
 
 , ¶12; see also
 
 Lyon
 
 ,
 
 2005 VT 63
 
 , ¶ 16,
 
 178 Vt. 232
 
 ,
 
 882 A.2d 1143
 
 (" '[T]he doctrine of estoppel must be applied with great caution when the government is the involved party ....' " (quoting
 
 My Sister's Place
 
 ,
 
 139 Vt. at 609
 
 ,
 
 433 A.2d at
 
 279 )). Unlike the majority of other jurisdictions, this
 Court does not impose additional requirements to guarantee that equitable estoppel against the government applies only in limited circumstances.
 
 *
 
 Thus, we must rigorously apply the fifth factor to ensure equitable estoppel is only applied to protect against the harm resulting from an individual or organization's detrimental reliance. Where those narrow factual circumstances are not present, as in this case, a careful balancing of the equities must act as a check to guarantee that, in protecting one person from harm, the courts do not harm an innocent third party. In such circumstances, moreover, the tipping point should be whether the injured third party depended equally on the government's proper administration of the laws or rules. Otherwise-as the majority's decision demonstrates-a party need only prove the first four factors and the balancing of the equities will inevitably resolve in that party's favor, even if an innocent third party is injured.
 

 ¶ 39. Here, the proper approach should be a balancing of Heller's reliance on the enforcement of zoning laws against Langlois's reliance on the zoning administrator's promises. Both are innocent parties. The cost to Langlois is simply monetary. The cost to Heller is more intrusive and damaging. And, when the damage to the Town's citizens' confidence in the proper administration of the zoning laws is added, a tipping point is reached. I do not believe that the application of equitable estoppel should injure an innocent third party, particularly where the third party relies on proper municipal governance of the laws.
 

 ¶ 40. I am authorized to state that Justice Robinson joins this dissent.
 

 The majority of other jurisdictions require additional proof beyond the five factors to establish equitable estoppel against the government.
 

 For example, some courts, including the majority of federal courts, require some sort of affirmative misconduct by the government employee that goes beyond mere negligence or an intent to induce reliance. Compare
 
 ante
 
 , ¶19 ("We also agree with the trial court's conclusion that under these facts Langlois has demonstrated that Kilburn intended that Langlois act upon his advice."), with
 
 Morgan v. Gonzales
 
 ,
 
 495 F.3d 1084
 
 , 1092 (9th Cir. 2007) ("A party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." (quotation omitted)). The Minnesota Supreme Court demonstrated the functionality of this standard in a case remarkably similar to this one:
 
 City of North Oaks v. Sarpal
 
 ,
 
 797 N.W.2d 18
 
 , 25-26 (Minn. 2011). In
 
 Sarpal
 
 , a zoning official mistakenly provided a document and approved a construction permit for a shed, even though the shed violated setback requirements.
 

 Id
 

 .
 
 Although the shed owners had incurred a unique expenditure, the court concluded that the zoning permit mistake was not wrongful conduct sufficient to support equitable estoppel against the government.
 

 Id
 

 . at 27
 
 .
 

 Similarly, other courts limit the doctrine by concluding that the doctrine cannot prevent the state from performing its governmental functions. See
 
 Chanos v. Nev. Tax Comm'n
 
 ,
 
 124 Nev. 232
 
 ,
 
 181 P.3d 675
 
 , 679 (2008) (holding that equitable estoppel did not apply to Attorney General enforcing open meeting law that had previously not been enforced). Still other courts limit the doctrine based on the government function being performed; for example, Maine does not permit equitable estoppel in the context of government taxation.
 
 Fitzgerald v. City of Bangor
 
 ,
 
 1999 ME 50
 
 , ¶ 15,
 
 726 A.2d 1253
 
 , 1256 ("When the governmental function at issue is the discharge of responsibilities regarding taxation, we have consistently held that estoppel may never be invoked.").